Argued and submitted December 20, 1996, reversed and remanded March 5, 1997

## STATE OF OREGON,
*Appellant,*

*v.*

## EDWARD ORLOVSKI,
aka Richard Years, aka Edward Jones,
*Respondent.*

(C95-11-39118; CA A92713)

933 P2d 976

David B. Thompson, Assistant Attorney General, argued the cause for appellant. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

David C. Degner, Deputy Public Defender, argued the cause for respondent. With him on the brief was Sally L. Avera, Public Defender.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

## EDMONDS, J.

■ Defendant was charged with possession of a controlled substance. ORS 475.992(1). He moved to suppress all of the evidence against him on the ground that it was a product of an illegal search under Article I, section 9, of the Oregon Constitution and the Fourth Amendment of the United States Constitution. The trial court allowed the motion, and the state appeals. In reviewing an order resolving a motion to suppress, we review the trial court's findings of historical fact for evidence in the record and then determine whether the trial court correctly applied the legal principles to those findings. *State v. Lambert,* 134 Or App 148, 151, 894 P2d 1189 (1995). We reverse and remand.

The following facts are uncontroverted for the purposes of defendant's motion. At approximately 3:30 a.m on November 27, 1995, Robert Slyter, a police officer, observed a pickup truck parked on 123rd Street just south of Powell Boulevard in Portland. Slyter parked his patrol car behind the truck, got out, approached the truck on the public sidewalk, looked through the clear glass window of the vehicle and saw defendant asleep on the front seat. Slyter then knocked on the window and defendant awoke. Slyter told defendant to roll down the window, which he did. Slyter, who could smell alcohol on defendant's breath, asked defendant for his name and social security number for the purpose of investigating and possibly issuing a citation for the violation of the city's "camping" ordinance.

Defendant told Slyter that his name was "Edward Jones." When Slyter asked whether he had any identification, defendant told Slyter that his driver's license was suspended. Slyter walked back to his patrol car and ran a computer check on the information that defendant had given him. He learned that there was no "Edward Jones" in the Oregon Department of Motor Vehicle files. When Slyter looked up from his task, he saw that defendant had walked about 200 feet away from his truck and was now in the parking lot of a nearby billiards hall. Slyter drove over to where defendant was and asked him why he was walking away.

Defendant responded that he had to go to the bathroom. Slyter then informed him that there was no Oregon driver's license for the name he had given, which prompted defendant to explain that he actually had a "Colorado I.D." When Slyter ran the same information for Colorado, he again was unable to locate anything for an "Edward Jones."

Slyter then told defendant that he was tired of being lied to, which prompted defendant to disclose his true name and social security number. Defendant also said, "I don't have any I.D. to back that up but my name and that is on my medicine bottle, which is back at the truck." Slyter asked defendant whether he would be willing to return to the truck so that Slyter could look at the medicine bottle to confirm that defendant was actually the person he said he was. Defendant consented and walked back to the truck where Slyter met him.

Defendant told Slyter that the medicine bottle was on the dashboard and that it was all right for Slyter to enter the truck and retrieve it. The officer then opened the driver's side door, located the medicine bottle, and in doing so, noticed on the floorboard a small leather case from which the orange cap of a syringe was protruding. Slyter picked up the case, which he believed might be a "hype kit." He showed the kit to defendant and asked, "Can I open this?" Defendant said, "Go ahead." Slyter then opened the container and found a bindle bag with white powder substance, a glass bottle with white powder, and a spoon with residue on it as well as a black scale with white powder residue on it. Slyter then arrested defendant for possession of a controlled substance.

Before trial, defendant filed a motion to suppress "all evidence obtained in this case." The trial court held a hearing and denied the motion. Subsequently, the court vacated its prior ruling on defendant's motion to suppress and allowed the motion. It explained:

"[T]he Court is accepting the fact that the [defendant's] vehicle was parked legally on a public street. No illegality about the parking at all.

"The officer, late at night, driving down the street, sees a legally parked car and decides to stop and go look in the window. I don't think it is a good use of police and money if

police are going to drive through the city of Portland and look in the windows late at night at every legally parked car.

"* * * * *

"And the court is going to find there is an expectation of privacy in that situation. If the officer could have seen—I'm taking the officer's word that when he passed by the vehicle, he couldn't see anyone in the vehicle.

"If he could have seen a person sleeping in the vehicle and had assumed that something could have been wrong with the person and based upon the community caretaking standards, had gone to look in the window to do that—but that was not an argument. You didn't argue that.

"[T]he court would have to find * * * that legally, with that expectation of privacy that's in the Constitution of the United States and the Constitution of the state of Oregon, that that expectation of privacy is there.

"* * * * *

"And making a legal finding that the officer violated the defendant's expectation of privacy in that legally parked vehicle in the middle of the night with no illegal criminal activity being observed or going around, no reasonable suspicion, no probable cause or anything, the Court has no choice but to suppress the evidence that was found.

"*And I don't get into any factual findings or legal findings I've made after the officer got up to the truck. I'm stopping right at the window of the truck.*" (Emphasis supplied.)

It is well settled that "a police officer's unaided observation, purposive or not, from a lawful vantage point is not a search under Article I, section 9, of the Oregon Constitution." *State v. Ainsworth*, 310 Or 613, 621, 801 P2d 749 (1990). Moreover, the Supreme Court has held that

"[a]n officer who has lawfully stopped a vehicle does not violate any occupant's rights in walking around the vehicle and looking through the windows of the vehicle to observe that which can be plainly seen." *State v. Jackson*, 296 Or 430, 438, 677 P2d 21 (1984); *see also State v. Wacker*, 317 Or 419, 426-27, 856 P2d 1029 (1993) (holding that no privacy interest was invaded when the officers saw the defendant's

activities while he was parked in a tavern parking lot and seated in a vehicle with the console light on).

■■■ In this case, the officer was properly on the sidewalk, and when he looked in the window of the truck, anything he saw at that point was in plain view. Thus, the trial court erred when it held that, at the moment the police officer looked in the window of the truck, he had violated defendant's privacy interests. Additionally, defendant cannot assert a reasonable expectation of privacy under the Fourth Amendment because he exposed himself to public view by parking on a public street.[1]

Defendant next argues that he was unlawfully "stopped" when the officer knocked on the window of the vehicle. *See* ORS 131.605 to ORS 131.615. However, we do not address that argument because the trial court expressly declined to reach that issue.

Reversed and remanded.

---

[1] The Fourth Amendment requires us to resolve two questions: first, whether the individual has shown that he or she seeks to preserve something as private; second, whether the individual's expectation of privacy is "one that society is prepared to recognize as 'reasonable.' " *United States v. Knotts,* 460 US 276, 281, 103 S Ct 1081, 1085, 75 L Ed 2d 55 (1983) (quoting *Katz v. United States,* 389 US 347, 361, 88 S Ct 507, 516-17, 19 L Ed 2d 576 (1967) (Harlan, J., concurring)).