Submitted on remand November 27, 1996, vacated and remanded with instructions May 28, petition for review denied October 21, 1997 (326 Or 68)

## STATE OF OREGON,
*Respondent,*

*v.*

## RICHARD OWEN READY,
*Appellant.*

## (C920041CR; CA A78407)

939 P2d 117

Craig P. Colby argued the cause and filed the brief for appellant.

Janet A. Klapstein, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Presiding Judge, and Riggs and Haselton, Judges.

DEITS, P. J.

## DEITS, P. J.

A jury convicted defendant of violating ORS 163.672,[1] possession of a depiction of sexual conduct involving a child. On appeal to this court, he challenged the constitutionality of the statute as violating Article I, section 8, of the Oregon Constitution. He also argued that the trial court erred in denying his motion to suppress evidence obtained as a result of a search of his room and that it erred in denying his motion for a judgment of acquittal on the basis that the state failed to prove that the videos at issue were produced after the enactment of ORS 163.672. Finally, defendant assigned error to the trial court's refusal to give certain requested jury instructions.

Based on our decision in *State v. Stoneman*, 132 Or App 137, 888 P2d 39 (1994), we concluded that the statute at issue here violated Article I, section 8, and reversed the trial court's order denying defendant's demurrer. In view of our disposition, we did not address the other issues raised by defendant. *State v. Ready*, 132 Or App 422, 888 P2d 603 (1996). Subsequently, the Supreme Court reversed our decision in *Stoneman*, concluding that ORS 163.680 (1987)[2] did not violate Article I, section 8, of the Oregon Constitution. *State v. Stoneman*, 323 Or 536, 920 P2d 535 (1996). The Supreme Court remanded this case to us, citing *Stoneman*. *State v. Ready*, 323 Or 645, 919 P2d 495 (1996).

We did not recite the facts in our previous decision. Consequently, we do so now. In December 1991, officers Julian and Duncan went to defendant's apartment looking

---

[1] ORS 163.672 was repealed by Oregon Laws 1995, chapter 768, section 16. It provided, in part:

"(1) A person commits the crime of possession of a depiction of sexual conduct involving a child if the person knowingly possesses or controls any photograph, motion picture, videotape or other visual recording of sexually explicit conduct involving a child."

[2] ORS 163.680 was repealed by Oregon Laws 1995, chapter 768, section 16. It provided, in part:

"(1) It is unlawful for any person to pay, exchange or give anything of value to observe sexually explicit conduct by a child known by the person to be under 18 years of age, or to pay or give anything of value to obtain or view a photograph, motion picture, videotape or other visual recording of sexually explicit conduct involving a child."

for a 16-year-old youth, Lucas Stoner, who lived there and whom the officers suspected had been involved in a recent traffic altercation. When they knocked on the door to the apartment, Stoner answered. He told the officers that he and his "dad"[3] lived in the apartment. Officer Duncan asked Stoner if they could look for a serape jacket that might tie him to the altercation. Stoner told them to "go ahead," and that they would not find the jacket.

Duncan first searched in a room that he described as appearing to belong to a young person because it was "messy" and had posters of rock groups on the wall. Duncan then approached the closed door to defendant's bedroom and asked Stoner for permission to enter that room to look for the jacket. Stoner told the officers to "Go ahead and look." While in the bedroom, the officers saw at least one photograph of what appeared to be a partially-clad youth and, inside a closet, through the open door, they saw a box of videotapes with such hand-scribed titles as "kid porn from Larry—movies then stills" and "Hot High and Horny—my porn from Larry." The titles of the videotapes were visible from a position outside of the closet. The officers contacted a sergeant in their office and, after consulting with him, seized the videotapes. Before leaving the apartment, they viewed the videos to verify that they, in fact, contained images of child pornography.

Defendant moved to suppress the evidence obtained as a result of the search of his bedroom. The trial court denied the motion. On appeal, defendant does not contest that Stoner consented to the search of the apartment, including defendant's bedroom. He argues, however, that the trial court erred in concluding that the consent was valid because Stoner did not have "actual authority" to consent to the search of defendant's bedroom, which, he argues, is necessary to justify a search of premises based on the consent of a third party.

Defendant is correct that when the state relies on the consent of a third party to justify a search under Article I, section 9, of the Oregon Constitution, the third party must

---

[3] Defendant was Stoner's legal guardian at the time of the search.

have actual authority to consent. *Lincoln Loan Co. v. City of Portland*, 138 Or App 688, 691, 909 P2d 1243, *rev den* 323 Or 136, *cert den* \_\_\_\_ US \_\_\_\_ , 136 L Ed 2d 306 (1996); *State v. Will*, 131 Or App 498, 504, 885 P2d 715 (1994). There are a number of factors that must be considered to determine whether a third party has actual authority to give consent. A critical factor is whether that person has " 'common authority' as evidenced by that person's 'joint use or occupancy of the premises.' " *State v. Lambert*, 134 Or App 148, 152, 894 P2d 1189 (1995), *quoting State v. Carsey*, 295 Or 32, 44-45, 664 P2d 1085 (1983). Circumstances involving consent by family members or children may require additional considerations. When a child purportedly gives consent, age is a pertinent factor in the inquiry. *Will*, 131 Or App at 505. Where there is a familial relationship between the third party and the person whose premises the officer is requesting consent to search, that relationship may be pertinent in determining if the third party has the requisite control over the area to be searched. *Carsey*, 295 Or at 42; *Will*, 131 Or App at 505.[4] Accordingly, the proper focus of the inquiry here under Article I, section 9, is whether, after considering the evidence regarding all' of the pertinent factors, Stoner had actual authority to consent to the search.

■ The above inquiry, including the ultimate question of whether Stoner had actual authority, necessarily involves resolution of factual issues. *Lincoln*, 138 Or App at 691. We are, of course, bound by the trial court's findings of fact if the evidence supports them. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). Further, if the trial court did not make findings on all of the pertinent facts, and there is evidence from which those facts could be decided more than one way, we will presume that the trial court found them in a manner

---

[4] Defendant also argues that the search was not justified under the Fourth Amendment to the United States Constitution. However, as we explained in *Will*, under the Supreme Court's decision in *Illinois v. Rodriguez*, 497 US 177, 111 L Ed 2d 148, 110 S Ct 2793 (1990), regarding the proper analysis under the Fourth Amendment, consent of a third party may be valid if it is based on "apparent authority." Because we hold that the circumstances here must be analyzed under the more stringent standard of Article I, section 9, it is unnecessary to address this issue.

consistent with its ultimate conclusion. *Id.* We then determine whether the trial court applied the correct legal principles to those findings. *State v. Orlovski,* 146 Or App 632, 933 P2d 976 (1997).

The problem here, however, is that the trial court did not use the correct standard under Article I, section 9, in evaluating the evidence and, consequently, did not make all of the pertinent findings. Rather than determining if Stoner had "actual authority" to give consent under these circumstances, the court evaluated whether there was objective evidence supporting the conclusion that Stoner had "apparent authority" to give consent. As the trial court explained:

> "Well [*United States v. Matlock,* 415 US 164, 94 S Ct 988, 39 L Ed 2d 242 (1974)] is probably the law and it's just a question of whether—actually there are two questions. One is whether there is mutual use of the property by persons generally having joint access or control for most purposes, and age is one factor to be used.
>
> "Now then, we come to the slightly different thing about consent of a third party. The police, at the time of entry, reasonably believe he possesses common authority over the premises. What we've been talking about here, to some degree, is what [defendant] says about the access. And I suppose that really doesn't matter very much. I suppose it has some inferential value, but that's about all. *The main question is did the police reasonably believe that there was common authority?*
>
> "First of all, the police believed that that was dad, because that's what was told to them. We do have a younger person. I've forgotten now how old he was, 16 years of age or something of that sort, 16, 17. And then he said 'That's dad's. I live here with my dad.' Well, that's reasonable to assume that he is living with his dad. Then the question is consider his age. Well, his age is getting within a couple years of majority or less. He is not some little grade school kid.
>
> "*The police have to demonstrate that they reasonably believed that the boy had common authority over the premises.* The police, apparently, at some point, were aware that the telephone in the [defendant's] bedroom worked and, apparently, found out the one outside [the bedroom] didn't work very well, so they were, apparently, aware that there

was telephone access. And there was some testimony that he had never been prohibited from going in the room.

"I guess another factor to be considered is also the fact that he gave them authority to go ahead and go in there. That is, I believe, a factor to be considered as well as to giving them a belief that he possessed common authority over the premises. And there I think the older age has something to do with this. I don't like very much the notion that police can go in and search somebody's parent's * * * bedroom on the say so of one of the kids, adopted, guardianship, natural kid, exchange students or whatever. I don't like very much that happening.

"* * * * *

"So I think the real question here even goes beyond *Matlock*'s joint access or control. For most purposes, I think it's different than the meter reader or different from the fireman who are letting the police in. It's different than the case I had in Astoria where the fireman happened to be a police officer as well.

"*So it seems to me that the police had a reasonable impression that the boy, full-sized fellow, who—that he had the run of the place gave permission,* used the phone, the bed was softer, never been prohibited, all of those things I think in this case allowed the police to go in to look for what they were looking for. The closet was open. And they seized, they looked at the video tapes, and I think they had clear authority to seize the things that were in plain view, which was the video tapes and I believe the two, I guess we'll call them oak, other lighter pictures." (Emphasis supplied.)

■    Many of the above findings that the trial court made may well be pertinent to the question of whether Stoner had actual authority to consent to the search of defendant's apartment. However, because the court did not directly address the question of whether he had actual authority, it is necessary to remand to the trial court to make that determination in the first instance. *See State v. Johnson*, 123 Or App 124, 127, 859 P2d 555 (1993) (case remanded where trial court may have based its decision on the wrong analysis and did not make findings).

Defendant also argues that, even if the consent was valid, the officers' warrantless seizure of the videotapes and

other printed materials was not supported by an exception to the warrant requirement and, therefore, was unlawful. The state asserts that, once the officers were lawfully in defendant's bedroom, the videotapes and photographs were legally seized because they were in "plain view." We agree.

If an officer is in a lawful vantage point, evidence of a crime or contraband that is in plain view may be seized. *State v. Russell*, 118 Or App 652, 657, 848 P2d 657, *rev den* 317 Or 272 (1993). The trial court found that the videotapes and the titles on the videotapes were visible from the open closet door. The title on one of the videotapes announced that the recording was "kid porn." The court found also that two of the photographs that the officers seized were facing outward when the officers entered the room. The evidence in the record supports those findings. If it is determined on remand that Stoner's consent to search was valid, then the officers had a right to be in defendant's bedroom and, accordingly, because these items were in plain view, the officers' seizure of this evidence was not unlawful.

Defendant also argues that even if the officers lawfully seized the tapes, they acted unlawfully in viewing them without a warrant. However, no warrant is required for the examination of evidence that announces its contents. *State v. Owens*, 302 Or 196, 206, 729 P2d 524 (1986); *State v. Dickerson*, 135 Or App 192, 195, 898 P2d 193 (1995). The label of these items announced their contents as contraband. Again, if on remand the trial court determines that Stoner's consent was valid, the viewing of the videotapes did not require a warrant.

Defendant also assigns error to the trial court's denial of his motion for a judgment of acquittal on the grounds that the state failed to prove that he acquired the materials at issue after the state prohibited their possession. In addition, he assigns error to the court's refusal to give his requested jury instructions pertinent to that defense.[5] His

---

[5] Defendant submitted a jury instruction that included as an element of the crime that "Defendant acquired the videotape after September 29, 1991 [when Oregon prohibited possession of videotapes depicting sexually explicit conduct involving a child.]." (Brackets in original.) He submitted another instruction, to be used if the court refused to give the instruction noted above, which stated that the state must prove beyond a reasonable doubt that defendant acquired the videotape after September 29, 1992.

argument has several subparts: (1) that, because he gave notice of his claim for a defense, the state was required to prove that the videotapes were produced after the statute's enactment date,[6] (2) that, if the statute is read to apply to the possession of child pornography produced before enactment of the statute, it is unconstitutionally overbroad and (3) that taking the videotapes was an unconstitutional taking.

■ In the first of the above arguments, defendant contends that the trial court erred in not granting his motion for judgment of acquittal based on the state's failure to prove that the videotapes were acquired after the enactment of the statute. ORS 161.055 provides that when a criminal defendant raises a defense, other than an affirmative defense, the state must disprove the defense beyond a reasonable doubt. However, "the right to present a defense is subject to the requirements that the defense be one that the law recognizes[.]" *State v. Troen*, 100 Or App 442, 445, 786 P2d 751, *rev den* 310 Or 791 (1990), *cert den* 501 US 1232 (1991). As we will explain, the defense that defendant sought to assert is not one that the law recognizes and, accordingly, we conclude that the trial court did not err in denying defendant's motion on that basis.

■ There are numerous exceptions to prosecution under *former* ORS 163.672, including possession by medical personnel for diagnosis and treatment, possession for law enforcement needs, and possession for treatment programs for offenders. ORS 163.682. ORS 163.690 also provides an affirmative defense that the defendant did not know or have reason to know that the sexually explicit conduct involved children. Possession of materials that were acquired before the effective date is not excluded from the application of the statute. To the contrary, the statute prohibited the *possession* of *any* such materials without regard to when the materials were acquired. Accordingly, under the plain language of the statute, the date that defendant acquired the videos is irrelevant. We conclude that the defense that the videotapes were

---

[6] There is no evidence in the record about the actual date the videotapes were filmed, most likely because the trial court refused to allow the defense that defendant requested.

acquired before the effective date of the statute is not an available defense under the statutes.

In the light of that conclusion, defendant's jury instructions would have added an element to the crime that is not in the statute and placed a burden on the state that it is not required to bear. The trial court is not required to give to the jury an instruction that is an incorrect statement of the law. *State v. Rogers*, 313 Or 356, 389, 836 P2d 1308 (1992), *cert den* 507 US 974 (1995); *Worley v. Oregon Physicians Service*, 69 Or App 241, 247, 686 P2d 404, *rev den* 298 Or 334 (1984).

Defendant also argues that

> "[t]he legislature must tailor its laws carefully to limit infringements on adult free expression to the minimum essential to the historically acceptable purpose. Protecting juveniles from future abuse by prohibiting future acquisition of videotapes produced in the future does not require that adults relinquish what they already privately possess." (Citation omitted.)

We understand this part of defendant's argument to be directed at the "overbreadth" of the statute. Essentially, his contention is that, even if ORS 163.672 does not specifically include as an element that the videotape was acquired after ORS 163.672 was enacted, if the statute is read to apply to videotapes acquired before the statute was enacted, and hence necessarily produced before enactment, the statute prohibits more than it permissibly may under Article I, section 8. This argument is based on the view that prohibiting the possession of videos that were acquired *before* enactment of the statute cannot be said to be directed to the harm to children arising from the production of the videos, which was the basis on which the Supreme Court concluded in *Stoneman* that the statute there did not violate Article I, section 8.

Based on the rationale of the court's decision in *Stoneman*, however, we conclude that the statute in question here is directed to the same harmful effects identified in *Stoneman* and that that harm exists regardless of when the videos were produced and acquired. As noted above, the statute at issue in *Stoneman*, ORS 163.680, prohibited paying or giving anything of value to obtain or view a photograph,

videotape or other visual reproduction of sexually explicit conduct by a child under 18 years of age. The Supreme Court concluded that the statute did not violate Article I, section 8, because it was directed not to the communicative substance of the videos, but to the harmful effects to children that necessarily follow from the production of the video:

> "We note, first, that ORS 163.680 (1987) prohibited commerce in material, the production of which *necessarily* involves harm to children. In fact, it is that aspect of the films and photographs described in ORS 163.680 (1987), *i.e., their relationship to harm to children*, rather than their communicative substance, that sets them apart." *Stoneman*, 323 Or at 546. (Footnote omitted; emphasis in original.)

In concluding that the prohibition of ORS 163.680 on the purchase of such videos was directed to the harmful effects on children resulting from the production of the video, the Supreme Court held that the concept of "harm," for purposes of Article I, section 8, was not limited to the harm that occurs to a child during the time that the child is participating in the production of the video. The court explained that trading in and use of the video after its production is a continuation of the harm involved in filming the act:

> "We conclude that ORS 163.680 (1987) prohibited the purchase of certain communicative materials, not in terms of their communicative substance, but in terms of their status as the products of acts that necessarily have harmed the child participants. So understood, it will be seen that the statute punished sexual exploitation by commerce that is a *continuation* and an integral part of the *underlying* harmful acts.
>
> "* * * * *
>
> "We already have noted that ORS 163.680 (1987) prohibited commerce of a very limited pool of communicative materials—*those whose production and, by extension, use, necessarily involve the harming of a child*. Article I, section 8, does not require the state to tolerate sexual abuse of children. ORS 163.680 (1987) went no further than to punish commerce that is a fruit of that abuse. So understood, the reach of ORS 163.680 (1987) was narrowly tailored to reach only forbidden effects and did not extend to privileged

expression." *Stoneman*, 323 Or at 548-50. (Supreme Court emphasis omitted; our emphasis supplied.)

■ Similarly, here, the statute prohibits the possession of certain communicative materials, not in terms of their communicative substance, but in terms of their status as a product of acts that have necessarily harmed children. The ability to possess and use the material is made possible only by the sexual abuse of children, which is, of course, harmful to children. Further, following the reasoning of *Stoneman*, the possession and use of the video continues that harm. Although the Supreme Court's analysis in *Stoneman* emphasized the commerce aspect of the statute in that case and how the statute destroys the incentive for manufacturing the videos by prohibiting the exchange of things of value or purchase of reproductions of the harmful acts, the statute here, which prohibits possession of such reproduction, is similarly concerned with eliminating the incentive for creating such reproductions. Without a consumer to lawfully possess and use the product, the incentive to produce such videos is destroyed. As was true of the statute in *Stoneman*, this statute goes no further than to prohibit conduct that is a "continuation and an integral part of the underlying harmful acts" that the statute seeks to eliminate. As in *Stoneman*, the statute here is directed at eliminating the underlying harm caused by child sexual abuse and, accordingly, does not violate Article I, section 8, of the Oregon Constitution.

Defendant also argues that by prosecuting him and taking his videotapes, the state is taking defendant's property in violation of the United States and Oregon Constitutions' "takings" clauses. Defendant's argument is without merit. *Emery v. State of Oregon*, 297 Or 755, 766, 688 P2d 72 (1984) (citizens may be required to furnish things necessary to support the system of criminal trials); *see also Thomas v. Dept. of State Police*, 138 Or App 209, 211, 907 P2d 262 (1995) (Legitimate governmental regulations aimed at preventing unlawful activities "cannot give rise to a taking under either constitution.").

For all the above reasons, we conclude that the trial court did not err in denying defendant's demurrer, his motion for judgment of acquittal and refusing to give requested jury

instructions. Accordingly, we vacate defendant's conviction for possession of a depiction of sexual conduct involving a child and remand to the trial court for further findings of fact concerning whether Stoner had actual authority to consent to a search of defendant's bedroom.

Conviction vacated and remanded to the trial court for further findings on the motion to suppress evidence based on Stoner's consent to search defendant's bedroom. If, based on those findings, the trial court allows the motion, it shall grant defendant a new trial. If it denies the motion, defendant's conviction shall be reinstated.