Argued and submitted March 16, affirmed August 15, 2007

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ANDREW WILLIAM BETNAR,
*Defendant-Appellant.*

Clatsop County Circuit Court
031274; A127947

166 P3d 554

Marc D. Blackman argued the cause for appellant. With him on the briefs was Ransom Blackman LLP.

Ryan P. Kahn argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Paul L. Smith, Assistant Attorney General.

Before Edmonds, Presiding Judge, and Wollheim and Sercombe,* Judges.

EDMONDS, P. J.

---

* Sercombe, J., *vice* Riggs, S. J.

## EDMONDS, P. J.

Following a trial to the court, defendant was convicted of 199 counts of encouraging child sexual abuse in the first degree, ORS 163.684, based on evidence that he duplicated or printed 199 sexually explicit images of children. On appeal, he raises five assignments of error, each of which we reject. Accordingly, we affirm defendant's convictions and sentences.

We state the facts in the light most favorable to the state. *E.g.*, *State v. Longo*, 341 Or 580, 582, 148 P3d 892 (2006). In June or July 1999, defendant's wife found a number of photographs in a drawer in their residence. Defendant's wife testified that the photographs "were pictures of naked ladies having sex encounters between adults. And also they were also [*sic*] of children involved in some of those sexual encounters." When confronted by his wife with the photographs, defendant said that he didn't want her to look at them, that he didn't want to discuss them, and to "leave it alone." Defendant seemed worried and embarrassed by the photographs. Defendant's wife returned the photographs to defendant. In 2001, the couple began suffering marital difficulties. In February, defendant's wife again found the photographs (which she had earlier returned to defendant) in their residence. This time, she kept the photographs.

In February 2003, defendant's wife contacted an attorney regarding dissolving her marriage with defendant. Because she was worried about retaining custody of their children, she eventually told the attorney about the photographs and instructed her to "use" them "only if it's absolutely necessary." The attorney, concerned about her statutory duty to report child abuse, ORS 419B.010, and believing that the photographs depicted underage females engaged in sexually explicit conduct, reported the existence of the photographs to the City of Warrenton Police Department. As a result, Warrenton Police Officer Holder met with the attorney and defendant's wife in the attorney's office in April 2003. At that time, the attorney gave Holder 24 photographs that he described as "several pictures * * * of young girls, none of [whom] have clothes on." Later, defendant's wife gave Holder several credit card bills for pornographic websites

that she had found in the couple's residence; they were dated in March, June, and July 2002 and March 2003.

Based on that information, Holder prepared an affidavit for a search warrant to search the house where defendant and his wife had lived, the house where defendant had subsequently moved, a storage unit, and other locations. A magistrate issued a search warrant and, pursuant to the warrant, the police seized evidence from the house where defendant was staying and from his storage unit. The evidence seized from the house included computer floppy disks, CD-ROMs, and a computer. The evidence seized from the storage unit included sexually explicit photographs, other sexually explicit material, and a number of floppy disks. Among the thousands of images seized, either printed or found on computer storage media, the state ultimately relied at trial on 12 images found on defendant's computer hard drive, 187 images on the CD-ROMs found at the house in which defendant was staying, and one of the photographs that it had received from defendant's wife. As noted, the trial court found defendant guilty on 199 of the 200 counts.[1]

■■ On appeal, defendant first argues that the statute under which he was convicted—ORS 163.684—violates his right to free expression under Article I, section 8, of the Oregon Constitution.[2] We review the trial court's ruling regarding the constitutionality of a statute for an error of law. *State v. Rangel*, 328 Or 294, 298, 977 P2d 379 (1999). ORS 163.684 provides:

"(1) A person commits the crime of encouraging child sexual abuse in the first degree if the person:

"(a)(A) Knowingly develops, duplicates, publishes, prints, disseminates, exchanges, displays, finances, attempts to finance or sells any photograph, motion picture, videotape or other visual recording of sexually explicit conduct involving a child or possesses such matter with the intent to

---

[1] The state conceded at trial that one of the images from the CD-ROMs did not support a conviction.

[2] Article I, section 8, of the Oregon Constitution provides:

"No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right."

develop, duplicate, publish, print, disseminate, exchange, display or sell it; or

"(B) Knowingly brings into this state, or causes to be brought or sent into this state, for sale or distribution, any photograph, motion picture, videotape or other visual recording of sexually explicit conduct involving a child; and

"(b) Knows or is aware of and consciously disregards the fact that creation of the visual recording of sexually explicit conduct involved child abuse.

"(2) Encouraging child sexual abuse in the first degree is a Class B felony."

As defendant recognizes, we upheld ORS 163.684—the very statute at issue here—against an Article I, section 8, challenge in *State v. Dimock*, 174 Or App 500, 27 P3d 1048 (2001), *rev den*, 334 Or 190 (2002). Relying on our opinion in *State v. Ready*, 148 Or App 149, 939 P2d 117, *rev den*, 326 Or 68 (1997), in which we determined that a predecessor to ORS 163.684 did not violate Article I, section 8, we held:

"If the state may constitutionally prohibit the mere possession of visual recordings of sexually explicit conduct involving a child, as we held in *Ready*, it may also prohibit their duplication and distribution. Duplication and distribution necessarily imply possession, and the statute is focused as narrowly on an effect that the legislature may proscribe as the statute in *Ready*."

*Dimock*, 174 Or App at 504. The holding in *Dimock* would appear to answer defendant's first assignment of error.

Nonetheless, defendant asserts that *Dimock* was wrongly decided. Relying on the Supreme Court's opinions in *State v. Ciancanelli*, 339 Or 282, 121 P3d 613 (2005), and *City of Nyssa v. Dufloth*, 339 Or 330, 121 P3d 639 (2005), defendant argues that "ORS 163.684 is directed at expression, not conduct, and hence unconstitutional under Article I, section 8." Defendant asserts that his conclusion "follows from two aspects of" the statute. We briefly address each in turn.

The first aspect of the statute that shows that it is directed at expression, according to defendant, is "its disparate treatment of different forms of child abuse." In defendant's view, the fact that the legislature has criminalized a

number of forms of child abuse, but that ORS 163.684 applies only to depictions of child *sexual* abuse, demonstrates that the statute is directed at restricting only one kind of expression. "[O]nce the Legislature has identified harmful effects," defendant insists, "it may not constitutionally proscribe those which involve expression * * * protected by Article I, section 8[,] while leaving unpunished those which have no constitutional standing."

◼ We disagree with defendant's reasoning. In *Ready*, we explained that *former* ORS 163.672 (1993), *repealed by* Or Laws 1995, ch 768, § 16, which prohibited possession of a depiction of sexual conduct involving a child, was aimed at conduct, not expression:

> "[H]ere, the statute prohibits the possession of certain communicative materials, not in terms of their communicative substance, but in terms of their status as a product of acts that have necessarily harmed children. The ability to possess and use the material is made possible only by the sexual abuse of children, which is, of course, harmful to children. Further, following the reasoning of [*State v.*] *Stoneman,*[ 323 Or 536, 920 P2d 535 (1996),] the possession and use of the video continues that harm."

*Ready*, 148 Or App at 160. The legislature's authority to determine what conduct is criminal is plenary, subject to constitutional limitations. *State v. Moyle*, 299 Or 691, 699, 705 P2d 740 (1985). That the legislature chose to criminalize conduct (in this case, printing or duplication of a visual recording of sexually explicit conduct involving a child) that necessarily harms children, without choosing to criminalize conduct involving depictions of other kinds of child abuse, does not logically demonstrate that ORS 163.684 punishes expression. For instance, the legislature could have chosen not to make depictions of other kinds of child abuse unlawful because it believed that there existed no economic incentives for those kinds of child abuse, unlike the economic incentives that exist for the dissemination of depictions of the sexual abuse of children. Accordingly, we reject defendant's first argument.

Next, defendant argues that "[t]he second aspect of ORS 163.684 that demonstrates that its actual focus is on

expression, not conduct, is its application to any depiction of the forbidden conduct, regardless of when or where it may have occurred." He explains that

> "ORS 163.684 does not, either on its face or as interpreted by the trial court, make actual exploitation of a child a necessary element of any violation. On the contrary, it purports to punish involvement with 'visual recording[s] of sexually explicit conduct involving a child' regardless of when or where they may have occurred and regardless of whether the portrayed conduct was lawful when or where it occurred."

It follows, in his view, that in the absence of a statutory requirement to prove the actual sexual abuse of the child depicted in the image, the statute is aimed at protected expression rather than conduct. Defendant also relies on the Supreme Court's characterization in *Ciancanelli* of its holding in *Stoneman*. In *Ciancanelli*, the court said that the statute it had addressed in *Stoneman* "made [sexual] exploitation of children a necessary element of any violation." 339 Or at 298. Defendant points to that language in support of his argument that *Dimock* was wrongly decided and that "ORS 163.684 is indeed unconstitutional under Article I, section 8."

First, we understand the court's description in *Ciancanelli* of its holding in *Stoneman* to have a different implication than defendant asserts. We understand the use of the words "sexual exploitation" by the *Ciancanelli* court in that passage to refer to the exploitation of the depicted children after they have been previously exploited by the actual sexual abuse perpetrated on them, an exploitation that arises from activities such as engaging in the dissemination or distribution of the images of child sexual abuse. We believe that the court's reference is to a point that it has made numerous other times, *viz.*, that commerce in communicative products from actual sexual exploitation of children "provides the very *raison d'etre* for engaging in the underlying acts of child sexual abuse." *Stoneman,* 323 Or at 549 (footnote omitted). Thus, in our view, *Ciancanelli*, a case involving protected expression under Article I, section 8, and adult sexual activity, provides no support for defendant's argument.

Moreover, the basic flaw in defendant's argument is that the focus of ORS 163.684, by its terms, is on acts that encourage the sexual exploitation of children. Under defendant's construct, the images depicting the child abuse are mere expressions of the actual sexual abuse of the persons portrayed in the images. Defendant is partially correct: Proof of the sexual abuse that is depicted in the image is not an element of proof of the offense of encouraging child sexual abuse. But the dissemination of the depiction of the child sexual abuse is more than mere expression; rather, it is further exploitative conduct that occurs after the abuse takes place. In other words, the circumstances of the underlying sexual abuse are not within the ambit of the statute's proscription, but the conduct that occurs thereafter involving the dissemination of the abuse portrayed is. In that sense, the statute does not punish expression any more than the statute that the Supreme Court upheld in *Stoneman* or the statute that this court upheld in *Ready*.

In short, neither of the arguments that defendant raises on appeal persuades us to revisit our conclusion in *Dimock* that ORS 163.684 does not violate Article I, section 8, of the Oregon Constitution. We reject defendant's first assignment of error.

■ In his second assignment of error, defendant asserts that the trial court erred in denying his motion for a judgment of acquittal on constitutional *ex post facto* grounds. In a variation of the argument addressed immediately above, defendant asserts that, because the state did not prove that the conduct depicted in the images he duplicated or printed took place after the effective date of ORS 163.684, punishing him for his actions violates the state and federal constitutional prohibitions on *ex post facto* laws.[3] For the reasons explained below, we reject that argument.

Defendant's argument is based on the interplay of the constitutional *ex post facto* prohibitions and the logic

---

[3] Article I, section 21, of the Oregon Constitution, provides, in part, "No *ex-post facto* law * * * shall ever be passed * * *." Article I, section 10, of the United States Constitution, provides, in part, "No state shall * * * pass any * * * ex post facto Law[.]" For purposes of this opinion, we need not be concerned with any differences between the federal and state constitutional prohibitions.

underlying this court's and the Supreme Court's rejection of Article I, section 8, challenges to statutes criminalizing conduct involving depictions of child sexual abuse. Regarding the former, in *State v. MacNab*, 334 Or 469, 475, 51 P3d 1249 (2002), the Supreme Court explained that

"like the framers of the United States Constitution, the framers of the Oregon Constitution intended for Article I, section 21, to proscribe four categories of penal laws: *those that punish acts that were legal before enactment*; those that aggravate a crime to a level greater than it was before enactment; those that impose greater or additional punishment than that annexed to the crime before enactment; and those that deprive a defendant of a defense that was available before enactment."

(Emphasis added.) Defendant does not assert that his duplication or printing took place before enactment of ORS 163.684 in 1995, but he does claim that, if the sexual abuse of the children depicted occurred before 1995, then the constitutional *ex post facto* prohibitions are implicated. It follows, according to defendant, that, to avoid the *ex post facto* prohibitions, the state was required to prove that the child sexual abuse depicted in the images involved in this case took place after the enactment of ORS 163.684. Because the state failed to prove those facts, defendant concludes that the trial court erred in denying his motion for a judgment of acquittal.

The court's opinion in *Stoneman* helps to inform the analysis of the issue. In that case, the Supreme Court—in explaining that *former* ORS 163.680 (1993), *repealed by* Or Laws 1995, ch 768, § 16, did not violate Article I, section 8, because it was not aimed at expression—focused on the economic incentives that encourage child sexual abuse:

"ORS 163.680 (1987) prohibited commerce in material, the production of which *necessarily* involves harm to children. In fact, it is that aspect of the films and photographs described in ORS 163.680 (1987), *i.e., their relationship to harm to children,* rather than their communicative substance, that sets them apart. In other words, ORS 163.680 (1987) prohibited the *purchase* of 'visual reproduction[s] of sexually explicit conduct by a child under 18 years of age,' not in terms of the content of those reproductions, but because they owe their very existence to the commission of

sexual abuse of a child and are, consequently, an extension of that harmful act—one that may, in many instances, provide an economic incentive to abuse the child.

"* * * * *

"* * * ORS 163.680 (1987) thus was directed at commerce in the materials described in the statute *only because they are the products of sexual exploitation of children.* * * *

"* * * * *

"We conclude that ORS 163.680 (1987) prohibited the purchase of certain communicative materials, not in terms of their communicative *substance,* but in terms of their status as the products of acts that necessarily have harmed the child participants. So understood, it will be seen that the statute punished sexual exploitation by *commerce* that is a continuation and an integral part of the underlying harmful acts."

*Stoneman,* 323 Or at 546-48 (emphasis in original).

Similarly, as explained above, ORS 163.684 does not include the harm to children as an "element" of the crime. Rather, the statute is aimed at the economic incentives for causing that harm. We rejected a related argument in *Ready,* 148 Or App at 158. In *Ready,* the defendant argued that, if the statute were interpreted to apply to visual depictions acquired before the statute was enacted, and hence necessarily produced before enactment, the statute would be overbroad under Article I, section 8. We explained "that the statute in question here is directed to the same harmful effects identified in *Stoneman* and that that harm exists regardless of when the videos were produced and acquired." *Id.* Moreover, in *Dimock,* 174 Or App at 504, we pointed out that the statute at issue in this case (ORS 163.684) had the same focus as the statute in *Ready.*

In sum, although the statute is concerned with the harm caused to children by sexual abuse, the original abuse is not itself an element of the crime. Rather, the statute captures conduct that exploits the abuse and makes *that* conduct unlawful much in the same way that other criminal statutes make conduct unlawful after the *actus reus* (the criminal act) of the underlying offense is committed. We conclude that the

state was not required to prove that the underlying sexual abuse took place by proving when and where it occurred and that the trial court therefore correctly denied defendant's motion for a judgment of acquittal on *ex post facto* grounds.

■ In his third assignment, defendant argues that the trial court erred when it denied his motion for a judgment of acquittal on the ground that the evidence was insufficient to prove that defendant duplicated or printed a photograph, videotape, or other visual record of sexually explicit conduct involving a child. We disagree that the state's evidence of printing or duplication was insufficient. We have reviewed the record, and it demonstrates that defendant was in possession of a computer that would permit the downloading and copying of images from the Internet or other sources. Also found in his possession were computer floppy disks, photographs, and CD-ROMs with the images on them. We conclude that a rational trier of fact could infer, based on that evidence, as well as the other evidence in the record, that defendant himself printed or duplicated the images found in his possession. While that inference is not the only inference that could be drawn from the evidence as to how he came to possess the images, it is a permissible inference that allowed the court to find beyond a reasonable doubt that defendant "printed" or "duplicated" the images. Accordingly, we reject defendant's third assignment of error without further discussion.

■ Defendant next argues that the trial court erred in denying his motion, filed one day before trial, to suppress evidence seized from the house where he was staying. In support of his motion, defendant argued that the search warrant affidavit did not provide probable cause because it was based on information that was both stale and privileged. At the noon break on the first day of trial, the trial court noted that it had received the motion only that day. The prosecutor asserted that the court should not consider the motion on the ground that it was untimely. Following argument, the trial court took the motion under advisement. After the trial concluded, the court denied the motion, stating:

"As to the Defendant's Motion to Suppress, the Court will deny the motion on the ground that it was untimely

filed. In the alternative, and if the Court is in error in ruling that the motion was untimely filed, then the Court denies the motion on its merits."

On appeal, defendant asserts that the trial court erred in denying his motion to suppress evidence seized pursuant to the search warrant. We review a trial court's denial of a motion to suppress on the ground that it is untimely for an abuse of discretion. *See State v. Johnson*, 340 Or 319, 323, 131 P3d 173 (2006) (holding that a trial court's decision to refuse to hear untimely motions to suppress was "well within the trial court's discretion"); *State v. Owens*, 68 Or App 343, 347, 681 P2d 165 (1984) (reviewing for abuse of discretion trial court's decision not to consider motion to suppress filed outside time limits of local court rules).

The search warrant in this case was issued in May 2003, defendant was arraigned in August 2003, and defendant's motion to suppress was filed in January 2005—on the eve of trial and over a year later. UTCR 4.010 provides,

"Motions for pretrial rulings on matters subject to ORS 135.037 and ORS 135.805 to 135.873 must be filed in writing not less than 21 days before trial or within 7 days after the arraignment, whichever is later, unless a different time is permitted by the court for good cause shown."[4]

The trial court, in ruling that defendant's motion was untimely, implicitly concluded that defendant had not shown "good cause" for the late filing. Thus, unless defendant establishes that the trial court's conclusion was outside "the range of legally correct discretionary choices * * * the trial court did not abuse its discretion." *State v. Rogers*, 330 Or 282, 312, 4 P3d 1261 (2000).

Defendant relies on ORS 133.673, which provides:

"(1) Objections to use in evidence of things seized in violation of any of the provisions of ORS 133.525 to 133.703 shall be made by a motion to suppress which shall be heard and determined by any department of the trial court in advance of trial.

___

[4] A motion to suppress is a "matter subject to ORS 135.037."

"(2) A motion to suppress which has been denied may be renewed, in the discretion of the court, on the ground of newly discovered evidence, or as the interests of justice require."

Focusing on subsection (2), defendant asserts that the trial court's ruling was inconsistent with the discovery of new evidence and the interests of justice.

The first problem with defendant's argument is that ORS 133.673(2) does not, by its terms, apply to defendant's motion in this case; rather, it applies only to motions that are "renewed." Here, defendant moved only once—the day before trial—to suppress evidence. Accordingly, defendant's focus on that provision is misplaced. Moreover, the principles enunciated in *Owens* demonstrate that the trial court properly exercised its discretion in this case.

In *Owens*, which defendant himself describes as "most analogous" to this case, the defendant's motion to waive the time limit imposed by local rules for filing motions to suppress was filed 40 days before the scheduled omnibus hearing and 46 days before trial. 68 Or App at 348. "The intent of the local rule," we explained, "is to insure that motions to suppress are filed promptly and to give the state time to prepare its opposition." *Id.* at 347. We noted that the state had had adequate time to prepare and that it had not asserted that it would have been prejudiced. Moreover, we noted, "[t]here was no reasonable likelihood of disruption of the judicial process or prejudice to the state if the court had allowed defendant's motion." *Id.* at 348. We concluded therefore that the trial court had abused its discretion in not permitting the defendant to file his motion to suppress.

Here, in contrast to *Owens*, defendant filed the motion to suppress on the eve of trial. The lateness of the motion created at the least a reasonable likelihood of disruption of the judicial process. Although defendant asserts that he could not challenge the search and seizure until he knew on what evidence the state would rely and that he did not have that information until "the virtual eve of trial," we are not persuaded. Defense counsel was aware of—or should have been aware of—the issues of staleness and privilege long before the state knew definitively the images on which it

would rely. Finally, filing a motion on the eve of trial that the judge did not receive until the day of trial left the state little time to respond, both on legal grounds and in evidence gathering and trial strategy decisions. We conclude that the trial court did not abuse its discretion in denying defendant's motion to suppress on timeliness grounds.

We turn, finally, to defendant's fifth assignment of error, in which he asserts that the trial court erred in entering 199 convictions. Following the state's case-in-chief, defendant separately moved for a judgment of acquittal on several different grounds. One ground was that the indictment charged only one crime:

"The simultaneous possession of multiple CD's * * * is a single offense, and therefore this * * * Indictment does not charge 199 violations. It charges one.

"Now, I guess in theory, the charge is a second one because they're claiming that they're now relying on one of the photos, or a copy—one of the images found at the—provided by [defendant's wife] to the police back in April of '03, but at most it would be two, not 200 offenses."

The prosecutor responded that it appeared that defendant was raising "a merger or *Boots* sort of issue * * *. And so I think it's more of that type of an issue more than a proper motion for Judgment of acquittal based on lack of evidence." When the trial court asked defense counsel whether he had any more motions, counsel replied, "I think those are the only *motions for judgment of acquittal*, Your Honor." (Emphasis added.) The trial court took the motion under advisement, ultimately denying the motion: "As to the third motion, which I will label or characterize concluding that only that if any crime was committed on these facts, it would constitute only one crime and not more than one crime. That motion also is denied."

■ On appeal, defendant asserts that the trial court erred in entering more than one conviction:

"In this case, it is undisputed that 198 of the counts for which defendant was prosecuted were based on the contents of six CD-ROMs and one personal computer that were found together in defendant's apartment. It is undisputed that defendant's possession of these items was alleged to

violate the same statutory provision. The trial court there-
fore erred in entering separate convictions and imposing
separate punishments on each of these counts. [The court]
must at the least vacate defendant's convictions on counts 1
through 66 and 68 through 200 and remand the case to the
trial court for entry of a single conviction on these counts."

In support of his argument, defendant cites ORS 161.067 (the
"anti-merger" statute) and a number of cases addressing
merger of convictions.[5] Initially, the state responds that
defendant did not preserve in the trial court the issue that he
raises on appeal.

We agree with the state's initial response. As noted,
defendant raised the issue whether the indictment charged
only one offense or 199 offenses in a motion for a judgment of
acquittal. However, he told the trial court when the prosecu-
tor remarked that defendant appeared to be making a
merger argument that "those are the only motions for judg-
ment of acquittal[.]"

Motions for acquittal are governed by ORS 136.445,
which provides:

"In any criminal action the defendant may, after close of
the state's evidence or of all the evidence, move the court for
a judgment of acquittal. The court shall grant the motion if
the evidence introduced theretofore is such as would not
support a verdict against the defendant. The acquittal shall
be a bar to another prosecution for the same offense."

Defendant's argument on appeal is not that any given count
of the indictment is not supported by sufficient evidence.
Rather, he asserts that, under ORS 161.067, the court could
enter only one conviction on all the counts of the indictment.
But, as we explained in *State v. Davis / Hamilton*, 194 Or App
382, 95 P3d 230 (2004), *adh'd to as modified on recons*, 197 Or
App 1, 104 P3d 602, *rev den*, 339 Or 230 (2005), a motion for
a judgment of acquittal under these circumstances does not

---

[5] In *State v. White*, 341 Or 624, 635 n 5, 147 P3d 313 (2006), the Supreme Court
explained that "the term 'merger' in the strict sense refers to lesser-included
offenses that 'merge' if a defendant is convicted of a greater offense. However, we
use the term here in its expansive sense, *i.e.*, to refer to the process of combining
guilty verdicts on multiple counts of a crime into a single count for the purposes of
entry of judgment." (Citation omitted.) We follow the same convention here.

preserve for appellate review a merger argument such as the one defendant now makes on appeal.

In *Davis / Hamilton*, we described—in a passage that applies equally to this case—why a motion for a judgment of acquittal does not preserve a merger argument:

> "Defendants do *not* contend that the state failed to adduce legally sufficient proof establishing the allegations of each separate count * * *. Nor do defendants dispute that any one of those counts, standing alone, would, by itself, be sufficient to support a conviction * * *. Rather, as we understand defendants' argument, it reduces to the assertion that those allegations, even as substantiated, cannot support *separate and multiple convictions* * * *. Thus, defendants' argument pertains not to the sufficiency of the state's proof but, instead, to the legal effect to be given to the jury's determination of each count. The latter is properly addressed by way of a post-verdict motion invoking ORS 161.067, and not by way of a motion for judgment of acquittal."

*Id.* at 390-91 (emphasis in original; footnote omitted). As we further explained in *Davis / Hamilton*, "[o]nly after the jury returned its verdict finding defendants guilty on some or all of the robbery counts could the court determine whether, given the proper construction of [the robbery statute] and the proper application of ORS 161.067, that verdict supported the entry of multiple convictions or the imposition of multiple sentences." *Id.* at 392.

That analysis disposes of defendant's fifth assignment of error. The result that defendant seeks on appeal is not one that he could have obtained in the trial court through his motion for a judgment of acquittal for two reasons. First, defendant does not appear to dispute on appeal that there was evidence from which a rational trier of fact could have found him guilty of each of the 199 counts. Under those circumstances, the trial court correctly denied the motion for a judgment of acquittal. Second, the merger of convictions that defendant seeks now, but did not seek in the trial court, cannot take place until after the convictions have occurred. At the time defendant moved for the judgment of acquittal, he did not stand convicted of any offense. As in *Davis / Hamilton*, defendant "effectively 'put the cart before the horse.' " *Id.*

 In his reply brief, defendant asks us to nonetheless address the trial court's failure to merge his convictions as error apparent on the face of the record. *See* ORAP 5.45(1) (addressing plain error review). The elements of plain error are that (1) the error is one of law, (2) the error is apparent, meaning the legal point is obvious, not reasonably in dispute, and (3) the error appears on the face of the record; that is, the court "need not go outside the record or choose between competing inferences to find it[.]" *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990). If the claimed error satisfies those requirements, then the court "must exercise its discretion to consider or not to consider the error" and "articulate its reasons for doing so." *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382, 823 P2d 956 (1991).

We conclude that the trial court did not commit plain error by entering separate convictions. As noted, merger is governed by ORS 161.067, which provides, in part:

"(1) When the same conduct or criminal episode violates two or more statutory provisions and each provision requires proof of an element that the others do not, there are as many separately punishable offenses as there are separate statutory violations.

"(2) When the same conduct or criminal episode, though violating only one statutory provision involves two or more victims, there are as many separately punishable offenses as there are victims. * * *

"(3) When the same conduct or criminal episode violates only one statutory provision and involves only one victim, but nevertheless involves repeated violations of the same statutory provision against the same victim, there are as many separately punishable offenses as there are violations, except that each violation, to be separately punishable under this subsection, must be separated from other such violations by a sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent. * * *"

Defendant argues that the merger issue in this case is governed by subsection (3). He asserts that, because "[t]he state is not required to prove the identity or existence of any 'victim' to establish a violation of any form of Encouraging Child Sexual Abuse, * * * violation of any of the Encouraging

Child Sexual Abuse statutes can be found to involve [only] a single victim." It follows, under defendant's premise, that only subsection (3) of the statute governs the merger issue. Defendant concludes that, because the state did not prove that there was a sufficient pause in defendant's criminal conduct to afford him an opportunity to renounce the criminal intent, he is guilty of only one crime. The state, in contrast, asserts that this issue is governed by subsection (2) of the statute. It claims that there are as many victims of defendant's crimes as there are individuals depicted in the images on which defendant's convictions are based.

The issue raised by the parties' arguments is how many victims were involved in defendant's crimes. That is, it is not clear whether—when multiple charges are based on images of different children—ORS 163.684 contemplates that there was one victim or more than one victim, or whether the statute is intended instead to promote the general welfare of children, rather than to address a criminal act committed against a particular person. Because ORS 163.684 is subject to all of the above interpretations, it is not clear which subsection of ORS 161.067, if any, governs the merger issue in this case. No Oregon case has addressed that issue, and the answer is not obvious. Because that point of law is reasonably in dispute, the trial court did not commit plain error in entering separate convictions.

Affirmed.