Argued and submitted January 29, affirmed August 4, 2004

STATE OF OREGON,
*Respondent,*

*v.*

JAMES IVY DAVIS, IV,
aka James Ivey Davis,
*Appellant.*

00-12-39969, A116035 (Control)

STATE OF OREGON,
*Respondent,*

*v.*

ALBERT LEWIS HAMILTON,
aka Albert Lewis Goldsby,
*Appellant.*

00-12-39970; A116439
(Cases Consolidated)

95 P3d 230

Robin A. Jones, Senior Deputy Public Defender, argued the cause for appellants. With her on the opening brief was David E. Groom, Acting Executive Director, Office of Public Defense Services. Robin A. Jones, Senior Deputy Public Defender, filed a supplemental brief on behalf of appellant James Ivy Davis, IV, *pro se.*

Janet A. Klapstein, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Linder and Ortega, Judges.

HASELTON, P. J.

## HASELTON, P. J.

Defendants, who were jointly tried as coperpetrators, appeal, raising 23 assignments of error. Twenty of those assignments—10 by each defendant—challenge the trial court's denial of motions for judgment of acquittal on various counts charging robbery in the first degree with a firearm, ORS 164.415, and robbery in the second degree with a firearm, ORS 164.405. As described below, we conclude that the trial court properly denied defendants' motions for judgment of acquittal in that (1) the state presented legally sufficient evidence on each challenged count; and (2) assuming, without deciding, the validity of defendants' arguments pertaining to the construction and operation of the robbery statutes, and particularly ORS 164.395, those arguments were immaterial to the determination of the motions for judgments of acquittal and were cognizable only through a post-verdict motion pursuant to ORS 161.067, relating to merger.[1] The remaining three assignments of error, which pertain to Davis only, lack merit, and we reject them without discussion. Accordingly, we affirm.

■    In reviewing the denial of motions for judgment of acquittal, "[w]e view the evidence in the light most favorable to the state, accepting reasonable inferences and reasonable credibility choices that the factfinder could have made." *State v. Presley*, 175 Or App 439, 443, 28 P3d 1238 (2001) (citation omitted). So viewed, the record establishes the following material facts:

On the night of December 22, 2000, Terry Weaver, the owner of the Spare Room Lounge in northeast Portland, was tending bar. The spare room is divided into two separate areas known as the "front bar" and the "back bar." Weaver was behind the front bar along with two employees, Anna Higgins and Patricia Alcorn. Alcorn was standing near the entrance to the kitchen. Two customers, Lori Owens and Joyce Hansen, were sitting on bar stools at the front bar, and Ernest Brumitt and William Lambert, also customers, were in the back bar.

---

[1] The text of ORS 161.067 is set out below. 194 Or App at 391 n 5.

At approximately 10:45 p.m., two masked men walked through the front door into the front bar. The men fired two shots into the ceiling of the lounge and ordered everyone to get down. As that occurred, Alcorn slipped into the kitchen to call 9-1-1. One of the men then ran towards the bar, pointed a gun at Higgins's chest, and demanded money. That same man then approached Weaver, pointed the gun at his head, and again demanded money. Weaver complied with the demand and began handing over money, first from the lounge's cash register and then from the lottery till. Owens and Hansen got down on the floor, and both felt threatened and intimidated by the gun shots and the perpetrators' actions. Alcorn, who was frightened by the gunfire, was put on hold by a 9-1-1 operator and watched through a small cook's window in the kitchen as one of the perpetrators ran past the bar. She then hid behind a walk-in refrigerator for protection.

Lambert and Brumitt, the patrons who were in the back bar, heard the gunshots and went to the front bar to see what was happening. As they watched the first man point the gun at Weaver, they tried to approach. However, the second man saw them and fired two more shots into the ceiling. Lambert and Brumitt, who felt threatened and scared, got down on the floor. The man who took the money then ran around the bar, fired several shots into the ceiling, and, after meeting up with his cohort, ran out the door. Shortly thereafter, Portland police arrived on the scene and, after an extended pursuit during which one of the assailants shot at two of the officers, defendants were apprehended.

The state charged both defendants with, *inter alia*, seven counts of first-degree robbery with a firearm, ORS 164.415, and seven counts of second-degree robbery with a firearm, ORS 164.405. Each of the seven first-degree robbery counts (Counts 3-9) was identical in form, alleging:

"The said **DEFENDANTS**, on or about December 22, 2000, in the County of Multnomah, State of Oregon, did unlawfully and knowingly use and threaten the immediate use of physical force upon **[NAMES]**, and during the commission of this felony, the defendants used and threatened the use of a firearm, to-wit: a handgun, a deadly weapon, while in the course of committing theft of property, to-wit: lawful

currency of the United States of America, with the intent of preventing and overcoming resistance to the said defendants' taking and retention immediately after the taking of the said property, contrary to the statutes in such cases made and provided and against the peace and dignity of the State of Oregon[.]"

The only variation in those counts was the identity of the person against whom defendants had "unlawfully and knowingly use[d] and threaten[ed] the immediate use of physical force" during the commission of the theft of property. Thus, Count 3 related to Weaver; Count 4 related to Higgins; and the remaining counts related to Owens, Hansen, Lambert, Brumitt, and Alcorn, respectively.

The same format was used for the seven counts (Counts 12-18) that alleged second-degree robbery. Each of those counts alleged:

"The said **DEFENDANTS**, on or about December 22, 2000, in the County of Multnomah, State of Oregon, did unlawfully and knowingly use and threaten the immediate use of physical force upon **[NAMES]**, being aided by another person actually present, while in the course of committing and attempting to commit theft of property, to-wit: lawful currency of the United States of America, with the intent of preventing and overcoming resistance to the said defendants' taking and retention immediately after the taking of the said property, and during the commission of this felony the defendants did use and threaten the use of a firearm, contrary to the statutes in such cases made and provided and against the peace and dignity of the State of Oregon[.]"[2]

The charges against both defendants were jointly tried before a jury. After presentation of the state's case, both defendants moved for judgments of acquittal against various counts. As pertinent to our consideration of the joint assignments of error, defendants moved for judgments of acquittal against first-degree robbery Counts 5-9—the first-degree

---

[2] In addition, the indictment charged defendant Hamilton with two counts of attempted aggravated murder with a firearm (Counts 1 and 2) and two counts of attempted first-degree assault with a firearm (Counts 10 and 11). The indictment also charged defendant Davis with one count of felon in possession of a firearm (Count 19) and one count of felony fleeing or attempting to elude a police officer (Count 20). The disposition of those counts is immaterial to our analysis of the assignments of error pertaining to the robbery counts.

robbery counts pertaining to Owens, Hansen, Lambert, Brumitt, and Alcorn, respectively—and against the second-degree robbery Counts 14-18 pertaining to the same individuals. The essence of defense counsels' argument was as follows:

"[T]he state has also failed to prove that those individuals were robbed by any individual.

"The evidence in the record is simply that they were present and witnesses to the robbery of Mr. Weaver and Miss Higgins, that they were frightened and intimidated by the process, and felt unable to—they didn't feel free to do what they may have wished to do.

"Under those circumstances, Judge, * * * there is nothing to suggest that those individuals were robbed. Their property wasn't taken, their property wasn't requested or demanded, none of them engaged in any conduct that could have constituted an attempt to resist the taking of the property of another, and so under these circumstances, it's our position that no counts of robbery with regards to Lori Owens, Joyce Hansen, Mr. Lambert, Mr. Brumitt, or Miss Alcorn have been proven."

The trial judge denied the motions, and the jury returned a verdict finding each defendant guilty on all 14 robbery counts.

On appeal, defendants assign error to the denial of their motions for judgments of acquittal on the robbery counts. Their argument, as before the trial court, is grounded in the language of ORS 164.395. That statute provides, in part:

"(1)  A person commits the crime of robbery in the third degree if in the course of committing or attempting to commit theft * * * the person uses or threatens the immediate use of physical force upon another person with the intent of:

"(a)  Preventing or overcoming resistance to the taking of the property or to retention thereof immediately after the taking; or

"(b)  Compelling the owner of such property or another person to deliver the property or to engage in other conduct which might aid in the commission of the theft * * *."[3]

---

[3] The elements of third-degree robbery, ORS 164.395, are expressly incorporated into the crimes of first- and second-degree robbery, ORS 164.405; ORS

Defendants reason as follows: (1) Under ORS 164.395, the gravamen of the crime of robbery is the taking or attempted taking of a person's property through the threatened or actual use of force against that person or another person. (2) Given that premise, the number of robberies for which a defendant is criminally liable cannot exceed the number of "owners" of the property that is the subject of the underlying theft or attempted theft. That is, if the defendant, in the course of taking A's property, threatens B, C, D, E, and F with the intent of overcoming their resistance to the taking of A's property, the defendant committed only one robbery, with A as the victim. The defendant might well be convicted of separate counts of, for example, assault involving B, C, D, E, and F, but there was only one robbery. (3) By extension, here, Owens, Hansen, Lambert, Brumitt, and Alcorn, stood in the same posture as B, C, D, E, and F in the illustration, with respect to defendants' takings of property from Weaver and Higgins, as "owners" of that property. Consequently, defendants could not be convicted on the robbery counts involving the threatened or actual use of physical force against Owens, Hansen, Lambert, Brumitt, and Alcorn.

The state responds that, read as a whole, "the robbery statutes are violated whenever an individual uses or threatens the use of force against *anyone* that might interfere with his goal to steal." (Emphasis in original.) Thus, the state contends, the statute evidences an intent to make robbery a "person" crime focused on the threatened or actual use of violence against individuals, not a property crime focused on the theft or attempted theft of property and that, as a result, there are as many robberies as there are "victims" of the use or threatened use of force.

In sum, as framed by the parties, the issue is whether, under ORS 164.395, the victim of a robbery is the "owner" of the property that is the subject of the underlying theft or attempted theft, each person upon whom the defendant uses or threatens the immediate use of physical force, or both. As an abstract matter, that question is provocative.[4]

---

164.415. Thus, although defendants challenge their convictions for first- and second-degree robbery, we refer throughout this opinion to the elements of those crimes set out in ORS 164.395.

[4] *Compare State v. Perkins*, 45 Or App 91, 95-96, 607 P2d 1202 (1980) (although the defendant threatened the use of force against two restaurant employees before

However, as a practical matter, given the procedural posture of this case, it is inapposite. That is so because, regardless of the correctness of defendants' reasoning, the trial court properly denied the motions for judgment of acquittal. Conversely, assuming without deciding the validity of defendants' arguments, those arguments were properly cognizable only through a post-verdict motion addressing the proper treatment under ORS 161.067 of the jury's verdict—and defendants do not assign error to the denial of any such motion.

■ ■ Motions for judgment of acquittal are governed by ORS 136.445, which provides:

> "In any criminal action the defendant may, after close of the state's evidence or of all the evidence, move the court for a judgment of acquittal. The court shall grant the motion if the evidence introduced theretofore is such as would not support a verdict against the defendant. The acquittal shall be a bar to another prosecution for the same offense."

Under that statute, a trial judge must grant a motion for judgment of acquittal if the evidence presented by the state is insufficient to allow a rational trier of fact to conclude that the defendant committed each element of the crime or crimes charged. *City of Portland v. Miller*, 62 Or App 145, 148, 659 P2d 980 (1983); *see also State v. Williams*, 313 Or 19, 24, 828 P2d 1006, *cert den*, 506 US 858 (1992) (describing standard). "When there is no evidence to prove an essential element of an offense or if the evidence offered to prove the required fact is insufficient to support a jury finding of proof beyond a reasonable doubt, there is insufficient evidence to submit the case to a jury and a judgment of acquittal is appropriate." *Miller*, 62 Or App at 149 (citing ORS 136.445).

■ We return to defendants' argument here. Defendants do *not* contend that the state failed to adduce legally sufficient proof establishing the allegations of each separate

---

taking restaurant's money, he could be sentenced for only one robbery because, although the gravamen of robbery is the harm or threatened harm to persons, sentences for multiple robberies in such a case would lose "sight of the fact that the ultimate criminal objective here was theft from the restaurant safe") *with State v. Dillman*, 34 Or App 937, 941, 580 P2d 567 (1978), *rev den*, 285 Or 195 (1979) ("[I]t appears that the legislature intended that the assault aspect of the crime of robbery be dominant and each person assaulted is the victim of the crime.").

count, *viz.*, that, in the course of committing a theft (or thefts), defendants knowingly used and threatened the immediate use of force against Owens—and against Hansen, and against Lambert, etc. Nor do defendants dispute that any one of those counts, standing alone, would, by itself, be sufficient to support a conviction for robbery. Rather, as we understand defendants' argument, it reduces to the assertion that those allegations, even as substantiated, cannot support *separate and multiple convictions* for robbery. Thus, defendants' argument pertains not to the sufficiency of the state's proof but, instead, to the legal effect to be given to the jury's determination of each count. The latter is properly addressed by way of a post-verdict motion invoking ORS 161.067,[5] and not by way of a motion for judgment of acquittal.

A familiar hypothetical highlights the pivotal procedural distinction: During the commission of a first-degree robbery, the defendant intentionally shoots and kills the victim to conceal the commission of the robbery. The defendant is then charged with two counts of aggravated murder—one alleging the commission of aggravated felony murder, ORS 163.095(2)(d), and the other alleging that the murder was committed to conceal the commission of the robbery, ORS 163.095(2)(e). At trial, the state submits legally sufficient proof as to each count, but the defendant moves for a judgment of acquittal arguing that, because he or she committed only one punishable aggravated murder, *see State v. Barrett,*

---

[5] ORS 161.067 provides, in part:

"(1) When the same conduct or criminal episode violates two or more statutory provisions and each provision requires proof of an element that the others do not, there are as many separately punishable offenses as there are separate statutory violations.

"(2) When the same conduct or criminal episode, though violating only one statutory provision involves two or more victims, there are as many separately punishable offenses as there are victims. * * *

"(3) When the same conduct or criminal episode violates only one statutory provision and involves only one victim, but nevertheless involves repeated violations of the same statutory provision against the same victim, there are as many separately punishable offenses as there are violations, except that each violation, to be separately punishable under this subsection, must be separated from other such violations by a sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent."

331 Or 27, 31, 10 P3d 901 (2000), both counts cannot be submitted to the jury.

In that hypothetical circumstance, the motion for judgment of acquittal would be properly denied. The state, having presented a *prima facie* case on each count, would be entitled to have the jury determine whether the defendant was guilty of aggravated murder as alleged in either or both of the counts. If the jury returned guilty verdicts on both counts, the proper disposition under ORS 161.067 would be for the trial court to enter one judgment of conviction for aggravated murder, enumerating each of the aggravating factors. *See id.* at 37.

Here, even assuming the predicates of defendants' argument, the same is true. Even under defendants' analysis, the separate counts naming Owens, Hansen, Lambert, Brumitt, and Alcorn are analogous to the separate aggravated murder counts in the hypothetical—*viz.*, they alleged *alternative* factual bases upon which defendants could be convicted of a single punishable robbery.[6] As in the hypothetical situation, once the state presented legally sufficient evidence as to each count, the motions for judgment of acquittal were properly denied. Only after the jury returned its verdict finding defendants guilty on some or all of the robbery counts could the court determine whether, given the proper construction of ORS 164.395 and the proper application of ORS 161.067, that verdict supported the entry of multiple convictions or the imposition of multiple sentences.

In sum, defendants' motions for judgment of acquittal effectively "put the cart before the horse." Accordingly, the trial court properly denied those motions.

Affirmed.

---

[6] Or, more accurately, given defendants' apparent characterization of both Weaver and Higgins as "owners" of property, defendants' analysis appears to permit the possibility that defendants could be convicted of no more than two separately punishable robberies.