Argued and submitted March 4, at Willamette University College of Law, Salem, Oregon, decision of Court of Appeals and judgment of circuit court affirmed June 10, 2010

# STATE OF OREGON,
*Respondent on Review,*

*v.*

# ALBERT LEWIS HAMILTON,
*Petitioner on Review.*

(CC001239970; CA A135407; SC S057583)

233 P3d 432

Robin A. Jones, Senior Deputy Public Defender, Office of Public Defense Services, Salem, argued the cause for petitioner on review. With her on the brief was Peter Gartlan, Chief Defender.

Janet A. Klapstein, Assistant Attorney General, Salem, argued the cause for respondent on review. With her on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Before De Muniz, Chief Justice, and Gillette, Durham, Balmer, Kistler, and Walters, Justices.**

DE MUNIZ, C. J.

** Linder, J., did not participate in the consideration or decision of this case.

## DE MUNIZ, C. J.

Defendant petitions for review of a Court of Appeals decision affirming his convictions and sentences for, among other crimes, multiple counts of robbery in the first and second degrees. The Court of Appeals affirmed, citing its decision in *State v. Williams*, 229 Or App 79, 209 P3d 842, *rev den,* 347 Or 44 (2009) in which it concluded that robbery is a crime against a person and that those against whom a defendant uses physical force or whom a defendant threatens in the course of a robbery are "victims" of that robbery, justifying multiple convictions and sentences. *State v. Hamilton*, 229 Or App 94, 209 P3d 851 (2009). We allowed defendant's petition for review and, for the reasons set out below, we affirm the Court of Appeals decision.

We take the facts that we consider relevant from a previous Court of Appeals opinion describing the factual context of the underlying charges against defendant:

"On the night of December 22, 2000, Terry Weaver, the owner of the Spare Room Lounge in northeast Portland, was tending bar. The Spare Room is divided into two separate areas known as the 'front bar' and the 'back bar.' [Approximately 200 customers were in the back bar.] Weaver was behind the front bar along with two employees, Anna Higgins and Patricia Alcorn. Alcorn was standing near the entrance to the kitchen. Two customers, Lori Owens and Joyce Hansen, were sitting on bar stools at the front bar, and Ernest Brumitt and William Lambert, also customers, were in the back bar.

"At approximately 10:45 p.m., [defendant and another man wearing masks] walked through the front door into the front bar. The men fired two shots into the ceiling of the lounge and ordered everyone to get down. As that occurred, Alcorn slipped into the kitchen to call 9-1-1. One of the men then ran towards the bar, pointed a gun at Higgins's chest, and demanded money. That same man then approached Weaver, pointed the gun at his head, and again demanded money. Weaver complied with the demand and began handing over money, first from the lounge's cash register and then from the lottery till. Owens and Hansen got down on the floor * * *. Alcorn * * * was put on hold by a 9-1-1 operator and watched through a small cook's window in the

kitchen as one of the perpetrators ran past the bar. She then hid behind a walk-in refrigerator for protection.

"Lambert and Brumitt, the patrons who were in the back bar, heard the gunshots and went to the front bar to see what was happening. As they watched the first man point the gun at Weaver, they tried to approach. However, the second man saw them and fired two more shots into the ceiling. Lambert and Brumitt * * * got down on the floor. The man who took the money then ran around the bar, fired several shots into the ceiling, and, after meeting up with his cohort, ran out the door. Shortly thereafter, Portland police arrived on the scene and, after an extended pursuit during which one of the assailants shot at two of the officers, defendant[ and a codefendant] were apprehended."

*State v. Davis/Hamilton*, 194 Or App 382, 385-86, 95 P3d 230 (2004), *adh'd to as modified on recons*, 197 Or App 1, 104 P3d 602 (2004), *rev den*, 339 Or 230 (2005).

Among other crimes, defendant was charged with two counts of attempted aggravated murder and two counts of attempted first-degree assault for firing at the officers, and seven counts each of first-degree robbery with a firearm and second-degree robbery with a firearm for his conduct involving the owner, employees, and certain customers at the bar. At trial, after the state presented its case, defendant moved for judgment of acquittal on each of the robbery charges relating to the bar customers and Alcorn, asserting that those persons were merely witnesses. The trial court denied the motion, reasoning that the gravamen of the offense of robbery was the threat associated with the crime, and that all seven people named in the counts had felt threatened. The jury subsequently convicted defendant of all 14 robbery counts.

Defendant appealed, asserting that the trial court had erred when it denied his motion for judgment of acquittal, and that his first-degree robbery convictions for crimes against the "witnesses" in the bar should merge with his robbery convictions for crimes against Weaver and Higgins. The Court of Appeals rejected defendant's arguments regarding the motion for judgment of acquittal, concluding that the state had presented evidence sufficient to permit the jury to decide whether defendant was guilty of the multiple robbery

charges. That court also declined to address defendant's argument that various of the robbery charges should merge, reasoning that defendant should have raised that argument in a post-verdict motion. *Davis/Hamilton*, 194 Or App at 392. Defendant petitioned for reconsideration, and the Court of Appeals held that a Sixth Amendment *Blakely v. Washington*, 542 US 296, 124 S Ct 2531, 159 L Ed 2d 403 (2004) error had occurred at sentencing and remanded the case to the trial court for resentencing. *State v. Davis/Hamilton*, 197 Or App 1, 104 P3d 602 (2004), *rev den*, 339 Or 230 (2005).

On remand to the trial court, and before sentencing, defendant again sought merger with regard to his robbery convictions; the trial court denied that motion. Defendant appealed and, as noted, the Court of Appeals affirmed, citing its decision in *Williams*.[1] In *Williams*, the Court of Appeals had concluded that the focus of the robbery statutes is the threat that the defendant made against a person and, therefore, all those persons that a defendant threatens in the course of a robbery are victims of the crime. 229 Or App at 84-85. Based on its reasoning in *Williams*, the Court of Appeals concluded here that robbery crimes committed against more than one victim were not subject to merger. *Hamilton*, 229 Or App at 95.

On review, defendant argues that the legislature intended the robbery statutes, set out below, to provide increasing degrees of seriousness for proving a single substantive offense, which defendant argues is "the use or threatened * * * use of force in the course of *committing a theft or attempted theft*." (Emphasis by defendant.) Defendant contends that, because the robbery statutes do not use the word "victim," and because theft or attempted theft is a necessary element of the crime of robbery, the definition of "victim" must come from the theft statute, ORS 164.015,[2]

---

[1] Defendant also filed a *pro se* supplemental brief challenging the consecutive sentences that were imposed without jury findings. The Court of Appeals rejected that argument under *Oregon v. Ice*, 555 US 160, 129 S Ct 711, 172 L Ed 2d 517 (2009), and defendant did not seek review of that decision in this court.

[2] ORS 164.015 provides, in part:

"A person commits theft when, with intent to deprive another of property or to appropriate property to the person or to a third person, the person:

"(1) Takes, appropriates, obtains or withholds such property from an owner thereof[.]"

which defines the victim of theft as the owner of the property, and ORS 164.005(4),[3] which defines "owner." Defendant argues that, by incorporating theft as the "root element" of the crime of robbery, the legislature made clear that the "victim" of the crime is the person from whom property is taken or demanded, and not bystanders, observers, or other persons who might suffer collateral harm. Therefore, defendant asserts, the guilty verdicts for robbery against the bar customers (counts 5 through 8 on verdict form) and Alcorn (count 9 on verdict form) should merge into the convictions for robbery committed against Weaver (count 3 on verdict form) and Higgins (count 4 on verdict form).[4] We turn to the question whether merger applies in this case.[5]

■ The state maintains that the seven guilty verdicts are separately punishable and should result in separate judgments of conviction under ORS 161.067(2). That statute provides, in part:

> "When the same conduct or criminal episode, though violating only one statutory provision involves two or more victims, there are as many separately punishable offenses as there are victims."

In analyzing whether a crime involves "two or more victims" within the meaning of ORS 161.067(2), this court determines who qualifies as a "victim" by interpreting the substantive statute defining the relevant crime. *See State v. Glaspey*, 337 Or 558, 561-63, 100 P3d 730 (2004) ("We conclude that ORS 161.067(2) uses the term 'victims' to describe

---

[3] ORS 164.005(4) defines "owner of property taken, obtained or withheld" or "owner" as "any person who has a right to possession thereof superior to that of the taker, obtainer, or withholder."

[4] Defendant also argues that the guilty verdicts for robbery in the second degree against the bar customers (counts 12 through 15 on verdict form) and Alcorn (count 16 on verdict form) should merge into the convictions for robbery in the second degree committed against Weaver (count 10 on verdict form) and Higgins (count 13 on verdict form). However, he did not raise that issue in the Court of Appeals. Sentences on all of the second-degree robbery counts were ordered to be served concurrently, and appear to have now been completed. That question is therefore not properly before us.

[5] Defendant advances the same legal arguments regarding merger that he made with regard to his motions for judgment of acquittal. However, defendant's post-verdict arguments no longer pertain to the sufficiency of the state's proof, but instead to questions regarding the proper construction of ORS 164.395, and to the proper application of ORS 161.067 to the entry of his multiple robbery convictions.

the category of persons who are victims within the meaning of the specific substantive statute defining the relevant offense."). To do so, we examine the text of the pertinent statute in context, and then, to the extent we find it helpful, we consider legislative history proffered by the parties. *See State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009) (after considering text and context, court considers any pertinent legislative history, giving it appropriate weight).

Like many criminal statutes, the robbery statutes reflect an escalating order of seriousness, beginning with robbery in the third degree. ORS 164.395 provides, in part:

"(1) A person commits the crime of robbery in the third degree if in the course of committing or attempting to commit theft * * * the person uses or threatens the immediate use of physical force upon another person with the intent of:

"(a) Preventing or overcoming resistance to the taking of the property or to retention thereof immediately after the taking; or

"(b) Compelling the owner of such property or another person to deliver the property or to engage in other conduct which might aid in the commission of the theft[.]"

The second-degree robbery statute, ORS 164.405, provides, in part:

"(1) A person commits the crime of robbery in the second degree if the person violates ORS 164.395 and the person:

"(a) Represents by word or conduct that the person is armed with what purports to be a dangerous or deadly weapon; or

"(b) Is aided by another person actually present."

Finally, the first-degree robbery statute, ORS 164.415, provides, in part:

"(1) A person commits the crime of robbery in the first degree if the person violates ORS 164.395 and the person:

"(a) Is armed with a deadly weapon;

"(b) Uses or attempts to use a dangerous weapon; or

"(c) Causes or attempts to cause serious physical injury to any person."

As defendant notes, the term "victim" is not used in any of the robbery statutes. However, the statutes generally only describe the person against whom force must be used as "any person" or "another person." For example, under ORS 164.395, a person is guilty of robbery in the third degree if the person commits or attempts to commit theft and the person "uses or threatens the immediate use of physical force *upon another person.*" (Emphasis added.) Likewise, under ORS 164.415(1)(c), a person is guilty of robbery in the first degree if the person violates ORS 164.395 and the person "[c]auses or attempts to cause serious physical injury *to any person.*" (Emphasis added.) The text of ORS 164.395(1)(b)—which refers to "[c]ompelling the owner of such property *or another person*" (emphasis added)—accentuates the importance of the generic words "any person" or "another person"; it demonstrates that the legislature deliberately chose not to limit the reach of the robbery statutes to the use of force against the owner.

██ Moreover, the robbery statutes demonstrate that the theft need not be successful. It is the additional factor of actual or threatened violence that transforms the conduct from theft, which requires only the intent to deprive, into a substantively different crime, robbery. This court has noted that

> "[r]obbery is the taking of property using threats of violence or otherwise creating a sense of fear in the victim, thus forcing the victim to hand over property. *It is the concept of fear or threat of violence that separates robbery from mere theft.* * * * The use or threat of violence is what causes the victim to part with property, and that coercive effect is what each of the robbery statutes addresses."

*State v. White*, 346 Or 275, 290, 211 P3d 248 (2009) (emphasis added). It follows that a "victim" of robbery includes a person against whom a defendant uses or threatens violence in the course of committing or attempting to commit theft, which can, but does not have to, be the owner or possessor of the property.

An examination of the legislative history pertinent to the robbery statutes confirms the foregoing conclusion. The robbery statutes are a product of the comprehensive revision of the state criminal code in 1971. The text of ORS 164.395 "contains the basic statement of the crime," with the texts of ORS 164.405 and ORS 164.415 "adding one or more of certain aggravating factors to the crime." Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report §§ 150, 154 (July 1970). The Commentary states that the intent of the robbery statutes is not only to retain the underlying principle in past statutes of prohibiting the forcible taking of property from another, but also to adopt the view that "repression of violence is the principal reason for being guilty of robbery." *Id.* at 155. The statutes also made it "immaterial whether property is or is not obtained," and removed the requirement that robbery "[could] only be consummated through an assault plus a taking of property from the person assaulted." *Id.* at 156. "The language 'use or threatens the immediate use of physical force upon another person' encompasses the type of case in which the force or threat is directed at someone other than the owner of the property." *Id.* The legislative subcommittee that reviewed the proposed robbery statutes noted that "the use or threat of force would not need to be directed at the owner of the property; it could be directed toward a member of the owner's family or one of his employees and still fall within the purview of the robbery statute." Minutes, Oregon Criminal Law Commission, Subcommittee No 1, June 22, 1968, 5. The subcommittee also noted that the purpose of the revision was to shift the focus of attention from the taking of property to the risk of injury and violence to the victim. *Id.*

That commentary confirms the wording of the statutes and this court's case law: the legislature intended that a "victim" of robbery includes a person against whom a defendant uses or threatens violence in the course of committing or attempting to commit theft. Here, in the course of committing theft of the bar's property, defendant directly threatened seven people with force to prevent their resistance to the taking of that property. Defendant and his codefendant fired multiple shots into the ceiling of the lounge, ordered the bar

customers to get down onto the floor, and aimed their weapons at Weaver and Higgins. Each of the seven people subjected to threats of violence in the course of the robbery was a victim for purposes of the robbery statutes. Thus, the trial court properly denied defendant's motion to merge his robbery convictions under ORS 161.067(2), and the Court of Appeals correctly affirmed that ruling.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.