STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

LARRY REEVES,
*Defendant-Appellant.*

Marion County Circuit Court
07C50616; A142015

280 P3d 994

Jason E. Thompson argued the cause for appellant. With him on the brief was Ferder Casebeer French & Thompson, LLP.

Harry B. Wilson, Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and David B. Thompson, Interim Solicitor General.

Before Armstrong, Presiding Judge, and Haselton, Chief Judge, and Brewer, Judge.

HASELTON, C. J.

## HASELTON, C. J.

Following a bench trial, defendant was convicted of 15 counts of encouraging child sexual abuse in the first degree, ORS 163.684,[1] based on 15 still image and movie files recovered from his personal computer. The trial court rejected defendant's arguments that all 15 counts should be merged into a single conviction; in doing so, the court apparently relied on the "sufficient pause" provision of ORS 161.067(3) and did not address the state's contention that the "separate victims" provision of ORS 161.067(2) precluded merger because the children depicted in the images were "victims" of defendant's violations of ORS 163.684. Defendant appeals the judgment of conviction, arguing, *inter alia*, that the trial court erred by (1) denying his motion for judgment of acquittal (MJOA) based on purported insufficiency of evidence that he "knowingly duplicated" proscribed material and (2) failing to merge the guilty verdicts into one conviction, ORS 161.067.[2] As explained below, we affirm the denial of defendant's MJOA, but conclude that the evidence does not support nonmerger under ORS 161.067(3). However, we also agree with the state that ORS 161.067(2) is applicable, depending on the number of child victims depicted in the images—which, in turn, depends on factual determinations to be rendered by the trial court in the first instance. Accordingly, we vacate and remand for reconsideration in light of this opinion.

We review the denial of a motion for judgment of acquittal for errors of law, considering the facts and any reasonable inferences in the light most favorable to the state to determine whether any rational trier of fact could have found every element of the offense beyond a reasonable doubt. *State v. Hall*, 327 Or 568, 570, 966 P2d 208 (1998). We state the facts consistently with that standard of review.

---

[1] ORS 163.684 (2009) was amended by Oregon Laws 2011, chapter 515, section 3. We apply the 2009 version of the statute, which is the version that was in force when defendant committed the acts that form the basis of the allegations. Throughout this opinion, all references to ORS 163.684 are to the 2009 version.

[2] Defendant raises other assignments of error, which we reject without discussion.

On August 14, 2007, Detective Wiltse, a computer forensics specialist for the Salem Police Department, remotely searched defendant's personal computer and discovered multiple electronic recordings of "sexually explicit conduct involving a child" that were saved on the hard drive. On September 7, 2007, Salem police seized defendant's computer during a warranted search of his home. Subsequent forensic analysis of the computer revealed that defendant had downloaded Internet-based file-sharing software, which allowed him to search and directly download files from other users' hard drives. This is called "peer-to-peer" file sharing.

Wiltse initially accessed defendant's hard drive using similar peer-to-peer file-sharing software. In his testimony at defendant's trial, Wiltse explained how file sharing works: The searching user opens the file-sharing software and enters a query, which produces a list of matching files that are available for downloading from an online network of other file-sharing users' computers. The user retrieves a desired file by double-clicking on the file name, which initiates a download. Downloading can be completed by individually double-clicking on each file name or by "highlighting" multiple files in a file list and then double-clicking once to simultaneously initiate multiple downloads. The act of downloading automatically copies the selected file (or files) onto the searching user's hard drive.

Forensic analysis of defendant's computer revealed that defendant had utilized the file-sharing software to search for and download hundreds of files, many of which contained recorded images of sexually explicit conduct involving a child. The forensic analysis also showed that, before his computer was seized, defendant had uninstalled the file-sharing software; however, a corresponding temporary folder had not been deleted. Using special software, Wiltse also accessed and searched the "unallocated space" of defendant's hard drive and located files that defendant had previously deleted.[3]

---

[3] In *State v. Ritchie*, 349 Or 572, 577, 248 P3d 405 (2011), the Supreme Court recounted an expert's testimony that explained the concept of "unallocated space":

" '[U]nallocated' space 'is basically clusters on the hard drive that may or may not have information written to them. If there's information written there, it is

Based on 15 separate still images and movies recovered from defendant's computer, the state charged defendant with 15 counts of encouraging child sexual abuse in the first degree, ORS 163.684.[4] Counts 1 through 5 were based on images saved in the temporary file, and Counts 6 through 15 were based on images recovered from the unallocated space in the computer's hard drive. In each of the 15 identical counts, the state alleged that defendant "did unlawfully and knowingly duplicate a visual recording of sexually explicit conduct involving a child while knowing that creation of the visual recording of sexually explicit conduct involved child abuse." The state alleged that each count was "an act of the same or similar character" but that each act was "a separate criminal episode."

During trial, the state introduced into evidence the names of hundreds of still image and movie files that had been downloaded and saved to defendant's computer. Many of the file names contain words and phrases indicative of depictions of sexual activity involving a child. For example, many of the file names reported the age of the child depicted,

---

* * * a file that was deleted.' * * * [W]hen a 'file' is created, the operating system 'allocates' the file to a certain location in the hard drive[.] * * * [A] master file table keeps track of that location, and * * *, when a file is deleted, the data in the file remains in the physical location that originally was allocated, but the master file table is altered to indicate that that location now is 'unallocated,' *i.e.*, available to be overwritten by new files. * * * [A]lthough files in unallocated space generally are not available to a user through ordinary means, they can be recovered with special forensic software * * *."

(Footnote omitted; first omission in original.)

[4] ORS 163.684 provides:

"(1)  A person commits the crime of encouraging child sexual abuse in the first degree if the person:

"(a)(A)  *Knowingly* develops, *duplicates*, publishes, prints, disseminates, exchanges, displays, finances, attempts to finance or sells any photograph, motion picture, videotape or other visual recording of sexually explicit conduct involving a child or possesses such matter with the intent to develop, duplicate, publish, print, disseminate, exchange, display or sell it; or

"(B)  Knowingly brings into this state, or causes to be brought or sent into this state, for sale or distribution, any photograph, motion picture, videotape or other visual recording of sexually explicit conduct involving a child; and

"(b)  Knows or is aware of and consciously disregards the fact that creation of the visual recording of sexually explicit conduct involved child abuse.

"(2)  Encouraging child sexual abuse in the first degree is a Class B felony."

(Emphases added.)

*e.g.*, "8yo," the specific body parts, or types of sex acts depicted. Many of the file names contained words strongly indicative of child pornography, *e.g.*, "kiddy," "pedo," "kdquality," and "childlover," and other less obvious indicators, such as the acronym "pthc," which stands for "preteen hard core." On cross-examination, Wiltse acknowledged that the name of a file does not always correspond to the contents of that file, and that even file names "which are strongly indicative that the file would contain child pornography" sometimes do not. The court viewed only the 15 electronic recordings recovered from defendant's hard drive that formed the basis of the charges.

After the state rested, defendant moved for a judgment of acquittal. Specifically, defense counsel argued:

"[DEFENSE COUNSEL]: My position is that the duplication took place when he downloaded it, and at the time he knowingly duplicated or downloaded the materials, [defendant] might have possessed it then, whatever it was, but [defendant], until he opened it, didn't know what was in it. * * *

"THE COURT: You say it was duplicated before he had the culpable mental state, basically is what you're telling me.

"[DEFENSE COUNSEL]: That's what I'm saying."

The trial court then denied the motion for judgment of acquittal.

Defendant subsequently raised a different contention in closing argument:

"Well, Your Honor, I'm not going to renew my motion for judgment of acquittal, but I do—I want to make a record of the fact that I'm not sure when the legislature passed this statute, that they envisioned that downloading from a computer via a peer-to-peer file sharing arrangement * * * is duplication, and I'm making that argument."

The trial court found defendant guilty on all counts. The court reasoned:

"In [ORS] 163.6[65](4)[5] * * *, [']visual depiction['] includes a computer image. That's exactly what we have.

---

[5] ORS 163.665(4) (2009), *amended by* Oregon Laws 2011, chapter 515, section 1, provided, " 'Visual depiction' includes, but is not limited to, photographs, films,

And they were—as undisputed, uncontroverted, once it was downloaded to the computer, that image was duplicated.

"* * * * *

"Each instance of the downloading, previewing, and viewing these shared files constituted a revictimization of those children for which I do think that's what the legislature intended to prevent * * *.

"It is uncontroverted that the acquisition of the images and movies required an affirmative act; that's not disputed. And I find that it was a knowing, conscious and intentional act in each and every one of the 15 instances, and the State has carried its burden to prove the—all the charges and each and every element with respect to the defendant beyond a reasonable doubt[.]"

At sentencing, defendant argued—as recounted in detail below, 250 Or App at 305—that the verdicts should merge into one conviction. The trial court disagreed, entered 15 separate convictions, and sentenced defendant to 130 months' incarceration with Counts 1 through 5 to run consecutively and Counts 6 through 15 to run concurrently to Count 5 and each other. Defendant appeals the resulting judgment of conviction.

On appeal, defendant contends that the trial court erred in denying his motion for judgment of acquittal because the state failed to present sufficient evidence that defendant "knowingly duplicated" any visual recording of sexually explicit conduct involving a child, as prohibited by ORS 163.684. In that regard, defendant posits three related arguments: (1) downloading does not constitute prohibited "duplication"; (2) even if downloading does constitute duplication, the state's proof of defendant's *scienter* was legally insufficient because the state did not prove that defendant knew that double-clicking on a file name caused the file to be copied to his computer; and (3) further, the state failed to establish that defendant knew, at the time that he double-clicked on the file names, that the images that he downloaded contained depictions of sexually explicit conduct involving a child.

---

videotapes, pictures or computer or computer-generated images or pictures, whether made or produced by electronic, mechanical or other means."

The state responds that defendant's first two arguments are unpreserved and that, with respect to the third, the evidence supported the requisite inference as to defendant's knowledge of the proscribed content of the images. We agree with the state for the reasons explained below.

To preserve an argument for appeal, the appellant must demonstrate that "the question or issue presented by the assignment of error timely and properly was raised and preserved in the lower court." ORAP 5.45(4)(a). The appellant must have made the argument with sufficient particularity to allow the trial court to rule on the argument and correct any error. *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000).

Defendant argues that the state failed to prove that defendant "duplicated" visual recordings as prohibited by ORS 163.684 because the legislature did not intend that mere downloading constitute prohibited duplication. In particular, defendant asserts that the legislative history of ORS 163.684 "makes it clear that it was intended to encompass those who 'disseminate' and 'deal' in child pornography," and that, although downloading and saving an electronic image to a personal computer might amount to possession, downloading is not "duplication" under ORS 163.684.

At trial, defendant never argued that his computer-related conduct did not constitute duplication. Indeed, and to the contrary, the trial court record demonstrates that both parties and the court assumed that downloading constituted duplication. *See, e.g.*, 250 Or App at 299 (defense lawyer's argument in support of MJOA: "*My position is that the duplication took place when he downloaded it*, * * * but [defendant], until he opened it, didn't know what was in it." (Emphasis added.)) It was not until closing argument that defense counsel suggested—without revisiting the MJOA—that downloading *might* not constitute "duplication":

"Well, Your Honor, I'm not going to renew my motion for judgment of acquittal, but I do—I want to make a record of the fact that *I'm not sure* when the legislature passed this statute, that they envisioned that downloading from a

computer via a peer-to-peer file sharing arrangement * * *
is duplication, and I'm making that argument."

(Emphasis added.)

In light of the consistent understanding during the
preceding trial that downloading constituted duplication, we
conclude that defense counsel's parenthetical and ambiguous
observation in closing argument was insufficient to raise and
preserve his present contention for our review. *State v.
Urbina*, 249 Or App 267, 271, 278 P3d 33 (2012) (observing
that the unpreserved issue of whether downloading consti-
tutes duplication is a question of first impression and not
plain error). To be sure, as an abstract proposition, we—and
the trial courts—are obligated to correctly construe operative
statutes, regardless of the interpretations that the parties
may offer. *See Stull v. Hoke*, 326 Or 72, 77, 948 P2d 722
(1997) ("In construing a statute, this court is responsible for
identifying the correct interpretation, whether or not
asserted by the parties."). However, that abstract proposition
is far from absolute in the concrete context of our review of
the denial of the MJOA where defendant, for the first time on
appeal, offers an entirely new interpretation of the predicate
statute and contends that the state's proof was inadequate as
measured against that construction. *See State v. Shepherd*,
236 Or App 157, 163, 236 P3d 738 (2010) (concluding that the
"[d]efendant loses, not because a correct interpretation of
[the statutory provision] compels that outcome, but because
she has not adequately preserved the argument that would
have put the meaning of the statute at issue"). Application of
the *Stull* principle is further complicated and qualified when,
as here, defendant, in seeking the MJOA before the trial
court, explicitly embraced the understanding of the statute
that he now challenges. That smacks of invited error. *See
State v. Ferguson*, 201 Or App 261, 269-71, 119 P3d 794
(2005), *rev den*, 340 Or 34 (2006) ("[I]f an appellant 'was
actively instrumental in bringing [* * *] about' the error,
then the appellant 'cannot be heard to complain, and the case
ought not to be reversed because of it.' " (quoting *Anderson v.
Oregon Railroad Co.*, 45 Or 211, 217, 77 P 119 (1904))). For
purposes of our review of the denial of the MJOA, we thus

assume, without deciding, that downloading constitutes duplication under ORS 163.684.[6]

As noted, defendant also argues that the court erred in denying his MJOA because the state's proof of *scienter* was insufficient in that it did not establish that defendant was aware that, as a practical matter, double-clicking on an electronic file name would copy the file onto his computer. Defendant did not make that argument below in support of his MJOA—and it is qualitatively different from the argument he did make—which pertained solely to defendant's purported lack of knowledge of the *content* of the images. *See* 250 Or App at 299. Accordingly, the matter is unpreserved and we do not consider it.[7]

In his third and final argument pertaining to the denial of the MJOA, defendant reprises the challenge that he raised before the trial court—*viz.*, that the state failed to produce sufficient evidence to prove that defendant knew, at the time of downloading, that each file contained a visual recording of sexually explicit conduct involving a child and that the creation of the recording involved child abuse. Defendant emphasizes Wiltse's acknowledgement that the name of a file does not always correspond to the contents. The state remonstrates that the file names themselves demonstrate defendant's awareness that he was downloading visual recordings of sexually explicit conduct involving a child regardless of whether each file image actually depicts what the file name indicates.

The state must prove beyond a reasonable doubt that defendant possessed the culpable mental state. ORS 161.095; ORS 136.415; *State v. Williams*, 313 Or 19, 24, 828 P2d 1006, *cert den*, 506 US 858 (1992). ORS 161.085(8) provides:

---

[6] We note that that assumption is not inconsistent with *State v. Barger*, 349 Or 553, 247 P3d 309, *adh'd to as modified on recons*, 350 Or 233, 253 P3d 1030 (2011), and *Ritchie*, 349 Or 572, for the reasons set out in *Urbina*, 249 Or App at 272-73.

[7] Defendant does not attempt to invoke plain error—and, in any event, such an attempt would have been unavailing here. *See Urbina*, 249 Or App at 272 (rejecting a similar plain error argument based, in part, on our observation that a trier of fact could infer that a user of a file-sharing software program would likely be sophisticated enough to understand its most basic functions).

" 'Knowingly' or 'with knowledge,' when used with respect to conduct or to a circumstance described by a statute defining an offense, means that a person acts with an awareness that the conduct of the person is of a nature so described or that a circumstance so described exists."

Here, the explicit titles of many of the files—which left nothing to the imagination—as well as their sheer volume—amply permitted a reasonable trier of fact to find, beyond a reasonable doubt, that defendant knew the downloaded files contained depictions of sexually explicit conduct involving a child and further that defendant knew that the creation of the visual recording involved child abuse. Accordingly, we affirm the trial court's denial of the MJOA. *See Urbina*, 249 Or App at 272 (rejecting a similar *scienter* argument).

We turn to defendant's second, overarching contention— that is, even if the denial of the MJOA was proper, the trial court erred in failing to merge the 15 guilty verdicts into one conviction. Each of the 15 counts on which defendant was found guilty involved the same statutory provision, ORS 163.684. As a general matter, with respect to a single criminal episode, criminal conduct that violates only one statutory provision will yield only one conviction unless the so-called "antimerger" statute, ORS 161.067, operates so as to permit the entry of multiple convictions. ORS 161.067 provides, in pertinent part:

"(2) When the same conduct or criminal episode, though violating only one statutory provision involves two or more victims, there are as many separately punishable offenses as there are victims. * * *

"* * * * *

"(3) When the same conduct or criminal episode violates only one statutory provision and involves only one victim, but nevertheless involves repeated violations of the same statutory provision against the same victim, there are as many separately punishable offenses as there are violations, except that each violation, to be separately punishable under this subsection, must be separated from other such violations by a sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent."

At sentencing, defendant argued that the verdicts on the 15 counts should yield a single conviction because (a) ORS 163.684 does not demonstrate a clear legislative intent to allow multiple convictions based on multiple victims and (b) the state failed to demonstrate the requisite "sufficient pause" between the charged violations. The state responded that merger was inapposite because each of the 15 images involved separate victims.

The trial court did not address the application of ORS 161.067(2) regarding the number of victims; instead, the court apparently relied on ORS 161.067(3) in imposing a separate conviction on each count. The court explained:

> "I found and still find that when this suggested search term was placed, there was a menu of different files that *required individual effort to separately open* all of those, for which supported the charge of duplication, since it all came to the computer * * *.

> "So they don't merge, and that jumps me over to [ORS] 161.067, because * * * they are identical[,] essentially[,] allegations in each charge, and when someone is sentenced for the identical charges * * *—let's get right to it and quote the statute—[']violated one statutory provision and involves only one victim,['] but I don't know that that one necessarily applies.

> "I will find that there were *discrete time frames from which a file was opened and then viewed and then moved to the next one, from which at any time conduct could have been stopped.*

> "* * * * *

> "The question really is: *Was this one criminal episode or not one criminal episode?* And I guess what I'm saying here is that *it was discrete episodes,* one after the other at best, from the defendant's perspective; at worst, it was something that was opened and enjoyed over time, which is the more likely conclusion based on the evidence before the Court."

(Emphases added.)

On appeal, defendant asserts that the state failed to establish the "sufficient pause" required for purposes of ORS 161.067(3). The state responds that each of defendant's

offenses was separated from the other offenses by a sufficient pause. In addition, the state reiterates its position before the trial court that, in all events, ORS 161.067(2) precludes merger because the children depicted in the images are the "victims" of defendant's violations of ORS 163.684 and, thus, there are multiple victims for purposes of ORS 161.067(2).

In reviewing a trial court's decision to not merge verdicts,

"[w]e review the trial court's ruling for errors of law. ORS 138.220. Additionally, we are bound by the trial court's findings of fact if there is constitutionally sufficient evidence in the record to support those findings. Our function is to decide whether the trial court applied legal principles correctly to those facts."

*State v. Watkins*, 236 Or App 339, 345, 236 P3d 770, *rev den*, 349 Or 480 (2010) (internal quotation marks omitted).

We begin with the trial court's rationale—the "sufficient pause" rationale under ORS 161.067(3)—for denying merger. Defendant was found guilty of duplication, which, for the purposes of this case, was the act of downloading. The trial court determined that defendant individually opened and viewed each of the 15 images. The trial court was aware that, in order to view the image, defendant would have had to double-click on the image file name and that, as explained, double-clicking initiated a download. The court expressly found that between each download there was a period during which the "conduct could have been stopped"—and it was on that finding that its antimerger ruling was ultimately predicated.

However, that finding is unsupported by any evidence in the record. Rather, Wiltse's testimony—the only testimony pertaining to the practical potential for a "pause"—demonstrated that all of the 15 files *could* have been downloaded concurrently, and the state offered no evidence supporting a reasonable inference that there was, in fact, a pause between the downloads of one or more of the files. *See State v. Huffman*, 234 Or App 177, 187, 227 P3d 1206 (2010) (holding that two counts of first-degree theft must merge because "there is no evidence in this record that one theft ended before the next began").

In particular, Wiltse testified, "When I type in a key-word, what comes back to me is a list of file names * * *, but it's not the files themselves. I have to actually double-click on the ones I want to download." He had earlier explained,

> "All I have to do as a user is simply double-click on the file name and the request gets sent out automatically to any computer that has that exact file that I'm requesting to download * * * and that file is written to my hard drive. * * * I now possess [a file] that I received from another set of file-sharing users."

In another exchange, Wiltse explained that the process for deleting files is similar to the process of downloading in that a user can delete or download multiple files with *one* double-click. The trial court expressed its understanding in the following colloquy:

"[DEFENSE COUNSEL]: How long does it take to delete a whole bunch of files, say, 120 files?

"[WILTSE]: Seconds or even a fraction of a second.

"THE COURT: If you are smart enough, you would be like him, you would just highlight all of those and then hit 'delete,' like the same way you would copy them.

"[DEFENSE COUNSEL]: Alright. But you've got a list of 120 files. Don't you have to highlight 120 files? Don't you just kind of hold it and it goes right down?

"[WILTSE]: You can do it that way, yes."

Wiltse testified that it was not possible to determine when the images in the unallocated space were downloaded or deleted. Moreover, the files found in the unallocated space could have been originally saved in the temporary folder, so the files that support Counts 1 through 5 could have been downloaded with the files that support Counts 6 through 15 in a single double-click. Therefore, defendant could have downloaded each of the 15 files separately, or he could have downloaded all 15 simultaneously. Although we are bound by the trial court's factual findings, there is a "complete absence of evidence" to support the trial court's determination that each of the 15 images was downloaded (*i.e.*, duplicated) separately—let alone with a sufficient pause between each download during which defendant could have renounced his

criminal intent. *See, e.g., Huffman,* 234 Or App at 187 n 6 (emphasizing "the complete absence of evidence on 'sufficient pause' in this record"); *see also State v. McConville,* 243 Or App 275, 283-84, 259 P3d 947 (2011) (same). Accordingly, ORS 161.067(3) is inapposite.

The state argues, nevertheless, that nonmerger with respect to some, and perhaps all, of the counts can be independently justified under ORS 161.067(2). In that regard, the state posits that "[t]he children depicted in child pornography are victims both of the underlying sexual abuse *and* of the possession and distribution of the resulting child pornography." (Emphasis in original.) The state further posits that, " 'because such activities, by their very nature, are abusive to children, it follows that a violation' [of ORS 163.684] necessarily involves material 'that is directly and inextricably connected with sexual abuse of children.' " (Quoting *State v. Stoneman,* 323 Or 536, 541, 920 P2d 535 (1996).)

Defendant remonstrates that ORS 161.067(2) does not apply because ORS 163.684 is aimed at protecting children generally, not specifically, and, thus, the state is the sole victim. In so asserting, defendant notes that, to obtain a conviction under ORS 163.684, the state need not prove the identity of any particular child. Defendant further argues that, if the legislature had considered individual children to be the victims of the prohibited conduct, the legislature would have classified the offenses by the age group of the child depicted.

We agree with the state.

In considering the applicability of ORS 161.067(2), we must determine who is a "victim" for purposes of ORS 163.684. We reserved that question in *State v. Betnar,* 214 Or App 416, 433, 166 P3d 554 (2007), where we observed:

"The issue raised by the parties' arguments is how many victims were involved in defendant's crimes. That is, it is not clear whether—when multiple charges are based on images of different children—ORS 163.684 contemplates that there was one victim or more than one victim, or whether the statute is intended instead to promote the general welfare of children, rather than to address a criminal act committed against a particular person. Because ORS 163.684 is subject to all of the above interpretations, it is

not clear which subsection of ORS 161.067, if any, governs the merger issue in this case. No Oregon case has addressed that issue, and the answer is not obvious."

*See also Urbina,* 249 Or App at 274 (same).

In *State v. Hamilton,* 348 Or 371, 376-77, 233 P3d 432 (2010), the Supreme Court laid out the proper methodology for construing ORS 161.067(2). The court explained:

"In analyzing whether a crime involves 'two or more victims' within the meaning of ORS 161.067(2), this court determines who qualifies as a 'victim' by interpreting the substantive statute defining the relevant crime. *See State v. Glaspey,* 337 Or 558, 561-63, 100 P3d 730 (2004) ('We conclude that ORS 161.067(2) uses the term "victims" to describe the category of persons who are victims within the meaning of the specific substantive statute defining the relevant offense.'). To do so, we examine the text of the pertinent statute in context, and then, to the extent we find it helpful, we consider legislative history proffered by the parties. *See State v. Gaines,* 346 Or 160, 171-72, 206 P3d 1042 (2009) (after considering text and context, court considers any pertinent legislative history, giving it appropriate weight)."

We reiterated that inquiry, with some refinement, in *State v. Moncada,* 241 Or App 202, 212, 250 P3d 31 (2011), *rev den,* 351 Or 545 (2012), explaining that,

"[w]here the statute defining a crime does not expressly identify the person who qualifies as a 'victim,' the court examines the statute to identify the gravamen of the crime and determine the class of persons whom the legislature intended to directly protect by way of the criminal proscription."

*See also State v. Torres,* 249 Or App 571, 575, 277 P3d 641 (2012) ("[D]etermining the identity of the pertinent victim, for purposes of merger under ORS 161.067, requires an examination of the specific substantive statute defining the relevant offense[.]").

Following the framework laid out in *Hamilton,* we examine the text of ORS 163.684 to determine who is a victim under that statute.[8] ORS 163.684, again, provides:

---

[8] Neither party has offered pertinent legislative history, and we are unaware of any precisely pertaining to this question.

"(1) A person commits the crime of encouraging child sexual abuse in the first degree if the person:

"(a)(A) Knowingly develops, duplicates, publishes, prints, disseminates, exchanges, displays, finances, attempts to finance or sells any photograph, motion picture, videotape or other visual recording of sexually explicit conduct *involving a child* or possesses such matter with the intent to develop, duplicate, publish, print, disseminate, exchange, display or sell it; or

"(B) Knowingly brings into this state, or causes to be brought or sent into this state, for sale or distribution, any photograph, motion picture, videotape or other visual recording of sexually explicit conduct *involving a child*; and

"(b) Knows or is aware of and consciously disregards the fact that *creation of the visual recording of sexually explicit conduct involved child abuse.*"

(Emphases added.)

The Supreme Court explained in *Glaspey* that the victim of a crime is, ordinarily, "a person who suffers harm that is an element of the offense." 337 Or at 565. As an element of the offense of encouraging child sexual abuse in the first degree, the state must prove that the defendant "[k]nows or is aware of and consciously disregards the fact that creation of the visual recording of sexually explicit conduct involved child abuse." ORS 163.684(1)(b). The person who suffers the harm in the creation of a visual recording of child abuse is the child who is abused. *See Stoneman*, 323 Or at 550 ("[The] production [of child pornographic materials] and, by extension, use, necessarily involve the harming of a child."); *see also United States v. Boos*, 127 F3d 1207, 1212 (9th Cir 1997), *cert den*, 522 US 1066 (1998) ("[T]he children depicted in the pornographic images—and not society as a whole—are the primary victims of the distribution of child pornography.").

Additionally, although the legislature did not use the term "victim" to describe the child depicted, the repeated use of "involving a child" indicates that the purpose of the statute is to protect the child involved in the visual recording.[9] We agree with the trial court that each duplication of

---

[9] In *Stoneman*, the Supreme Court observed that the statutory scheme that criminalizes encouraging sex abuse

the visual recording "constitute[s] a revictimization" of the child depicted. The specific harm addressed by ORS 163.684 is the proliferation of such depictions of child abuse. *Urbina,* 249 Or App at 271.

Defendant's arguments to the contrary are unavailing. First, the fact that the state is not required to prove the identity of a child victim does not demonstrate that the child is not the victim of the prohibited conduct. Although the identity of the victim of a crime is often either obvious or ascertainable, the state is not required to prove the identity of the victim. *See, e.g., Jones v. State of Oregon,* 246 Or App 253, 260, 265 P3d 75, *rev den,* 351 Or 403 (2011) (explaining that proof of reckless endangering did not require proof of a specific victim). Furthermore, the circumstances surrounding the recording and distribution of depictions of child sexual abuse frequently make it difficult to ascertain the identity of each child depicted. Nonetheless, the child's anonymity does not make him or her any less the victim of the recorded act of abuse and the subsequent duplication of the recording.

Finally, the fact that the legislature did not classify the offenses according to the age of the child depicted does not demonstrate, as defendant argues, that the legislature did not contemplate individual victims. The legislature's definition of "child" in ORS 163.665(1) (2009), *amended by* Oregon Laws 2011, chapter 515, section 1, expresses the legislature's intent to include any victim "who was less than 18 years of age at the time the original image in the * * * visual recording was created."

We thus conclude that the "victim" for the purpose ORS 163.684 is the child—or children—depicted in the downloaded images that are the basis of the 15 counts on which the court rendered guilty verdicts. That, in turn, requires an idiosyncratic disposition. The trial court entered multiple convictions based on an erroneous rationale—which ordinarily

---

"was aimed at preventing and punishing conduct—the subjection of children under 18 years of age to sexual exploitation for the purposes of visual recording. * * * [T]he legislative focus was not on the message or 'substance' of the [recordings] but, rather, on their undeniable relationship to the underlying acts of sexual exploitation of children."

323 Or at 548.

would result in reversal and remand with direction to enter a single conviction and concomitant resentencing. *See, e.g., Huffman,* 234 Or App at 187; *McConville,* 243 Or App at 284. However, here, given the potential applicability of ORS 161.067(2), depending on the extent to which different child victims are depicted in the images that are the subject of each of the 15 counts—a determination that is necessarily within the trial court's factfinding competence—the proper number of convictions to be entered in this case remains to be determined.

Convictions on 15 counts of encouraging child sexual abuse in the first degree vacated; remanded with instructions to determine whether any counts merge pursuant to ORS 161.067(2) and entry of convictions, and for resentencing.